# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS    (SBN 108325)
BEN J. MEISELAS       (SBN277412)
FRIDA HJORT            (SBN 298474)
Attorneys For Plaintiff RACHAEL CRONIN On
Behalf Of Herself And All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHAEL CRONIN, On Behalf of Herself and All Others Similarly Situated; <br><br> Plaintiffs, <br><br> vs. <br><br> EOS PRODUCTS, LLC, a New York Limited Liability Company, and DOES 1-10; <br><br> Defendants. <br><br> _____ | Case No. <br><br> **CLASS COMPLAINT FOR DAMAGES** <br><br> 1. **Violations of Consumer Legal Remedies Act [Cal. Bus. & Prof. Code §§ 1750, _et seq._]** <br> 2. **Violations of Unfair Business Practices Act [Cal. Bus. & Prof. Code §§ 17200, _et seq._]** <br> 3. **Breach of Express Warranty** <br> 4. **Breach of Implied Warranty** <br> 5. **Unjust Enrichment** <br> 6. **Fraud – Intentional Misrepresentation and Concealment of Fact** <br> 7. **Injunctive Relief** <br><br> **DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

1.      Plaintiff Rachael Cronin brings this putative class action, on behalf of herself and the putative class comprised of potentially hundreds of thousands of similarly situated consumers, against eos Products, LLC's ("EOS").

2.      EOS develops, markets, advertises, brands, promotes, distributes, and sells – through retail and online – one of the highest-grossing lip-balm products on the market today called EOS Visibly Soft Lip Balm.  The lip-balms come in a variety of colors and "flavors," with over-the-top and misleading names like ***Barbados Heat-Wildberry***, ***Medicated Tangerine***, and ***Honeysuckle Honeydew***, just to name a few.

3.      The lip-balms come in attractive bright circular pods that stand out from the other oblique-shaped lip-balms in the marketplace.

4.      "EOS" is as an acronym for "evolution of smooth."  The company has achieved meteoric growth through print and online marketing campaigns that link smooth lips and the use of EOS lip-balm with beauty, health, celebrity, and success.

5.      EOS uses and pays celebrity "brand ambassadors" such as Kim Kardashian, Brittney Spears, Miley Cyrus, Hillary Duff, and others, to post pictures on Instagram and social media, creating a viral marketing frenzy around the product, targeted at consumers.  In fact, the EOS website, ***evolutionofsmooth.com*** has an entire paged called **"EOS BUZZ-CELEBRITY FANS"** advertising hundreds of celebrity endorsements and sponsored content on social media with hashtags including **"#YUMMY"** and **"EOSOBSESSED"** along with posts treating EOS lip-balm as a travel companion, a cure for health and hygiene problems, and a product that consumers cannot live without.   The message EOS is trying to mislead consumers about is clear: EOS lip-balm is a daily necessity requiring constant use regardless of the actual condition of your lips to improve your health, diet, and appearance.

6.      The advertisements and marketing by EOS emphasizes that the product

is "organic" and "gluten free," aligning the product with popular dietary trends, despite the fact that the lip balm has no consumable value.

7.      In reality, behind the smoke-and-mirrors, EOS is anything but smooth.

8.      A substantial number of consumers, upon information and belief in the tens of thousands, and potentially in excess of hundreds of thousands, who have purchased and used the product – spanning all gender, ages, and race, have experienced devastating adverse reactions to the product, consisting of mild to severe rashes, dryness, bleeding, blistering, cracking, and loss of pigmentation, lasting from a few days, to a few months, and some consumers with long lasting and perhaps permanent symptoms.

9.      EOS is, and has been, on notice of the serious adverse side-effects caused by the use of its product.  Consumer complaints have flooded the EOS Facebook page and their email. Consumers, including the Plaintiff in this action have written to EOS to share their complaints and adverse health problems arising from the use of the production.

10.      Despite being on notice that its products are physically harming consumers who purchased the lip-balm, EOS has:

A. Failed to provide any warning on the product.

B. Failed to provide any warning on its website or advertising material.

C. Failed to recall the product.

D. Failed to commission a study regarding the adverse effects of its proprietary formula.

11.      Putative Class Representative Rachael Cronin purchased "Summer Fruit" EOS lip-balm on Friday, December 4, 2015 at a Target retail store in Los Angeles, California.

12.      Ms. Cronin had observed EOS advertisements on social media and print magazines prior to purchasing the product.  Ms. Cronin was attracted to the product as she was shopping because of the bright red pod container of the EOS lip-balm.

Ms. Cronin read the packaging which stated:

> **CAN A LIP BALM MAKE YOU SMILE? WE THINK SO. THAT'S WHY WE CREATED THIS ONE. . . EOS IS LIP BALM IS 95% ORGANIC . . . EOS KEEPS YOUR LIPS MOIST, SOFT, AND SENSATIONALLY SMOOTH.**

13.   As with all of EOS packaging, the packaging contained no warnings about potential adverse side-effects from the products use.  Ms. Cronin began applying the lip-balm that same day.

14.   Within hours, her lips became substantially dry and coarse, what Ms. Cronin describes as feeling like "sandpaper," causing her to apply more of the balm on her lip to achieve the results of becoming "sensationally smooth."

15.   Ms. Cronin's lips did not become smooth, and began severely cracking on the edges causing flaking and bleeding from the cracks.

16.   By the next day, Ms. Cronin's lips and surrounding skin area had severe blistering and rashes causing her to seek medical care on Monday, December 7, 2015.

17.   Ms. Cronin was in severe shock and panic.

18.   Ms. Cronin's condition consisted for approximately 10 days.

19.   Ms. Cronin shared the story of her experience with EOS and posted a picture of her face with boils and blisters on Facebook. The post set off a frenzy of responses from other individuals who shared the identical experience with EOS. It became clear this was a massive national health problem.

20.   Ms. Cronin brings this putative class action to compel EOS to be a transparent and responsible corporate citizen by (1) publically addressing and curing the overwhelming health concerns it has received from consumers, (2) warning consumers of the adverse effects caused by the product on its packaging, website, and marketing materials, and (3) making whole the consumers who have been

injured by the product.

## JURISDICTION AND VENUE

21.    This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action in which some members of the class are citizens of states different from the States where Defendants are citizens.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendant: (a)  is authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District: (b) currently does substantial business in this District; and (c)  is subject to personal jurisdiction in this District.

## PARTIES

23.    At all times relevant to this matter, Plaintiff Rachael Cronin was a resident of Los Angeles County, California and a citizen of California. Plaintiff purchased EOS products from a Target retail store located in Los Angeles County. Plaintiff purchased and used Defendant's EOS lip balm product because she saw and relied on the purported beauty and health benefits described by the EOS website, advertising, and in the store where she purchased EOS lip-balm.

24.    Plaintiff, on behalf of herself and the putative national class and putative California subclass, who purchased EOS lip-balm products (the "Putative Class") during the Class Period, as further defined below, bring this class action against Defendants EOS Products, LLC.

25.    Plaintiff's allegations are based in part on the investigation of counsel, including but not limited to reviews of advertising and marketing material, public filings, articles, journal actions, and other publicly available information, and thus on information and belief, except as to the individual actions of Plaintiff, as to which

Plaintiff has personal knowledge.

26.    Plaintiff has been damaged in that EOS lip-balm caused the injuries described above.  Plaintiff, and members of the Putative Class, would not have purchased the product if they were warned of the potential dangers of the product or if they knew the product would have caused them injury.

27.    Defendant EOS is a New York LLC.  EOS provides beauty products. It offers lip balms, hand lotions, body lotions, and shave creams. EOS advertises and sells its lip-balm and products through online stores and retailers in the United States and Canada, including the EOS lip balm brands that are the subject of this lawsuit. Specifically, the brands included in this lawsuit include: **Blackberry Nectar, Coconut Milk, Strawberry Sorbet, Blueberry Acai, Pomegranate Raspberry, Summer Fruit, Sweet Mint, Honeysuckle Honeydew, Lemon Drop, and Medicated Tangerine**.

28.    Each of the DOES 1-10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendant(s) in said co-defendant(s) performance of the acts and omissions described below.  Plaintiff sues each of these Doe Defendants by these fictitious names because Plaintiff does not know these Defendants' true names and capacities. Despite reasonable efforts, Plaintiff has not been able to ascertain the identity of DOES 1-10.

29.    Plaintiff, on behalf of herself and the putative class, alleges fraud, unjust enrichment, breach of express warranty, as well as violations of the California Consumers Legal Remedies Act and the California Unfair Business Practice Act, through Defendant's promotions, advertising and labeling.

30.    Plaintiff further alleges that each Defendant is directly liable and/or vicariously, jointly and severally liable for the violations of the California

Consumers Legal Remedies Act and the California Unfair Business Practice Act.

31.     At all times relevant, Plaintiff heard and saw various EOS promotions, commercials and advertisements for EOS's Visibly Soft Lip Balm and lip balm products.

## FACTUAL ALLEGATIONS

32.     EOS was founded in 2006 by a former commodity trader, and "start-up guru," named Craig Dubitsky who is no longer affiliated with the company.

33.     Defendants placed EOS lip balm products, including **Blackberry Nectar, Coconut Milk, Strawberry Sorbet, Blueberry Acai, Pomegranate Raspberry, Summer Fruit, Sweet Mint, Honeysuckle Honeydew, Lemon Drop, and Medicated Tangerine**, into the stream of commerce.

34.     EOS has promoted the use of its Visibly Soft Lip Balm and lip balm products to consumers as having special beauty and health benefits.

35.     EOS promotes EOS lip balms as being enriched with natural conditioning oils, moisturizing shea butter and antioxidant vitamin C & E which nourishes for immediately softer, more beautiful lips.

36.     EOS promotes that its product is "healthy" "organic" and "gluten free."

37.     EOS pursued an aggressive marketing campaign, utilizing product placement as well as celebrity endorsements in magazines, Twitter, Pinterest, and Instagram.  EOS markets heavily through its website "evolutionofsmooth.com."

38.     EOS advertises its products on its website and permits users to purchase products on the website. The website promotes the products in the following ways:

    a. **NEW! Get noticed with visibly softer lips. Nourish your lips with the delicious flavor of blackberry nectar.**

    b. **Treat your lips to an all-natural lip balm that's bursting with moisture and the refreshing flavors of strawberry, blueberry and peach.**

    c. **Delight your lips with the irresistible flavor of fresh honeydew and**

**with moisture that keeps your lips feeling soft and smooth all day long.**

39.    For example, EOS website includes the following sections:



1
2
3
4
5
6
7
8
9
10
11
12



13        40.   There is an entire section on the EOS website called **"EOS BUZZ"**
14   which displays celebrity endorsements from the biggest names in entertainment
15   today including Kim Kardashian and Britney Spears.   The EOS BUZZ section
16   presents as follows:

17
18
19
20
21
22   
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

41.   Examples of EOS viral marketing campaigns include the following social media efforts involving celebrities, which promote the product as healthy, as a cure for celebrity problems, and as a travel companion.





1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19



20        42.     While boasting celebrity endorsements and magazine advertisements,

21   and while making lofty representations regarding the health and curative effects of

22   their lip balm products, EOS provides no warnings on its product, packaging,

23   labeling, or anywhere on the website regarding health problems which are caused by

24   the mix and use of ingredients used in its products, and the lack of instruction

25   regarding the appropriate amount of use of the product.

26        43.     In reality, EOS lip balm has caused a massive health crisis among

27   purchasers for which EOS has been on notice of for a substantial period of time.

28   EOS has caused consumers lips to crack, bleed, itch, burn, flake, and generate severe

boiling and blistering on and around the lips.

44.    Plaintiff, and putative class representative, Rachael Cronin, purchased EOS lip balm from a Los Angeles, California Target on December 4, 2015, and progressively developed substantial health problems by December 6, 2015, and thereafter, including but not limited to dryness, cracking, bleeding of lips, and breaking out in boils and blisters on and around her lips requiring medical attention. Below is a picture of the front / back packaging of the EOS lip balm "summer fruit flavor" like the one purchased by Ms. Cronin.

 

45.    Below is a before / after picture of Ms. Cronin, showing the true results of what can occur after using EOS products and the progression of the adverse reaction Ms. Cronin suffered from.







46.  Ms. Cronin provided a written complaint to EOS and was contacted by a "medical health team" stating the product had nothing "inherently allergenic," but advised Ms. Cronin to seek medical attention, which she already had.

47.  Nowhere on the EOS website, packaging, or labeling is there any reference to the existence of a "medical health team" created to address health concerns caused by EOS lip balm.

48.  More alarmingly, nowhere on the EOS website, packaging, and labeling are there any warnings about potential dangers and health problems caused by EOS lip balm.  This is despite the fact that EOS has received massive amounts of complaints from consumers related to adverse health effects caused by the use of EOS lip balm and the fact that EOS has established a medical team related to adverse health effects caused by its product.

49.  After sharing her story and picture on a Facebook thread, Ms. Cronin was flooded with responses from individuals who shared their experience and health

problems.   The scope of individuals who have likely been harmed by the lip balm appears to massive in scope, ranging in thousands to potential hundreds of thousands.   Below is a small sample of other pictures of individuals suffering the same or similar reactions to Ms. Cronin:





50.    The claim by EOS that it uses only the best and most natural ingredients and that nothing in its product is "inherently allergenic" is false.   A cursory review of the specific ingredients which are combined and contained in the lip balm, is cause for serious medical concern.

51.    Specifically, the lip balms contain the following ingredients:

a. **Sodium Hyaluronate**: Sodium hyaluronate ("SH") is similar to the fluid that surrounds your joints. SH can be used as a "lip puffer," and causes swelling and inflammation of the lips.  SH gel can also be used

as a topical medication. According to the Dartmouth-Hitchcock Norris Cotton Cancer Center Health Encyclopedia: (1) You should not use sodium hyaluronate if you are allergic to it, (2) It is a FDA pregnancy category C, meaning it is not known whether sodium hyaluronate topical will harm an unborn baby, (3) If you use sodium hyaluronate gel or cream on an open skin wound, ***dab a thin layer*** of the medicine onto the affected area ***with as little rubbing*** as possible, and (4) Stop using the medication and call your doctor if your symptoms do not improve or if they get worse, or if you develop new symptoms.

b. **Butyrospermum parkii (shea butter)**:  It is derived from the seeds of the African Shea Tree. Notably, EOS lists the ingredient using the outdated name "Butyrospermum Parkii," when it is actually referred to by the Federal Drug Administration as Vitellaria paradoxa (Sheanut). Under the Food Allergen Labeling and Consumer Protection Act of 2004 (FALCPA), "peanuts" are considered a "major food allergen." For purposes of section 201(qq) of FALCPA, Vitellaria paradoxa (Sheanut) is considered a "nut," and thus a "major allergen." Under section 403(w)(1), a major food allergen must be declared using the name of the food source from which the major food allergen is derived.  FALCPA requires that in the case of tree nuts, the specific type of nut must be declared (*e.g.,* almonds, pecans, walnuts, sheanuts).   Here, EOS advertises its product to consumers as though it should be consumed with slogans such as "yummy!" and "tasty" but fails to indicate the product is derived from nuts.

c. **Ascorbyl palmitate:** Because Ascorbyl palmitate is fat soluble, Vitamin C, and easily penetrates the skin, the Cosmetic Ingredient

Review (CIR) Expert Panel recommends that *lower concentrations be used in leave-on formulations*.  EOS provides no formal guidance or recommendations for the amount of use for the product.  Far from it, the advertising by EOS encourages frequent, constant, and frenetic use of the product each day.

d. **Tocopherols (TCP):** Are a class of organic chemical compounds (more precisely, various methylated phenols), many of which have vitamin E activity. The most common serious side effect is bleeding. Side effects occurring as a result of long-term alpha-tocopherol supplementation have not been adequately studied. The most worrisome possibility is that of impaired blood clotting, which may increase the likelihood of bleeding ('hemorrhage') in some individuals.

e. **Stevia Extract:** Stevia plant is a small, sweet-leaf herb of South American origin used as a sweetener for food. Stevia plant and its processed products were at one time banned from the European Union countries and by the FDA for suspected mutagenic effects. One study found 16% of infants with nasal allergies to be allergic to stevia, 34% of infants with bronchial asthma to be allergic to stevia and 64% of infants with atopic eczema to be allergic to stevia.  *See Anaphylaxis* by stevioside in infants with atopic eczema, ALLERGY 2007: 62: 565–572, H. Kimata.

52.    On the bottom of the EOS website, there are two tabs.  The tab that is displayed is labeled "Product Details," and the non-displayed tab for which the visitor to the website is required to click to view is labeled "Ingredients."  The product details include broad statements such as "Long-lasting moisture for immediately softer, more beautiful lips," "Smoothes on clear, and "Gluten-free."

The ingredients section contains the above ingredients.   The "Product Details" and "Ingredients" on the website presents as follows:



53.     Defendant EOS provides no warning regarding the potential dangerous side-effects of the ingredients used in the product, or the cumulative effect of combining these very diverse ingredients into a singular delivery lip balm module.

54.     Indeed, not only does EOS fail to provide any warnings regarding the product, EOS provides no disclaimers at all about any aspect of the product, nor does it provide instruction or any information about recommended use.  Instead, EOS encourages through its advertisements, the constant and consistent application of the product, causing foreseeable and actual harmful health consequences to consumers.

55.     The only "direction" provided by EOS on its packaging is:

**DIRECTIONS: TWIST OFF TOP. PUCKER UP. SMOOTH ON. SMILE.**

56.     Defendant EOS has also failed to disclose to consumers the substantial amount of complaints it has received based on adverse health consequences caused by the product, and its formation of a medical health team related to its over-the-counter product.

57.     These claims by Defendant that its products are healthy and safe, and the omission of any warning or instruction, is unfair, deceptive and/or unconscionable.

58.     But for the intentional concealment and/or omission of any warnings, and but for Defendant EOS' claims that the product is safe, healthy, and contains no allergens, Plaintiff and the putative class would not have purchased the product and have been injured.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this class action on behalf of himself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60.     Plaintiff seeks to represent a "National Class" defined as follows:

**All United States residents who purchased EOS Lip Balm,**

**excluding Defendant, Defendant's officers, directors, and employees, Defendant's subsidiaries, those who purchased the products for the purpose of resale, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

61.     Plaintiff seeks to represent a "California Subclass" defined as follows:

**All California   residents who purchased EOS Lip Balm excluding Defendant, Defendant's officers, directors, and employees, Defendant's subsidiaries, those who purchased the products for the purpose of resale, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

62.     Plaintiff is a member of the Class that she seeks to represent. Plaintiff is a United States resident who purchased EOS Lip Balm.

63.     Plaintiff is a member of the Class that she seeks to represent. Plaintiff is a California resident who purchased EOS Lip Balm.

64.     The definition of the Class is narrowly tailored so as to include only identifiable Class Members who can be identified through Defendant's wholesale sale information. The Class has no time limit because, as discussed below, the statute of limitations has been tolled by the Defendant's fraudulent concealment of the true nature of the product purchased by Class Members.

65.     The proposed Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the Class is presently unknown to Plaintiff, but it is believed to comprise thousands of California residents, and millions of United States residents, thereby making joinder impractical.

///

///

66.    Common questions of fact and law exist as to all Class Members and predominate over questions affecting only individual members. These include, but are not limited to, the following:

(a)    Whether, in their normal and customary use by consumers, EOS Lip Balm works as advertised, marketed, and conveyed to consumers;

(b)    Whether, in the course of business, Defendant represented that EOS Lip Balm has characteristics, uses, benefits or qualities that it does not have when used in a customary manner by consumers;

(c)    Whether the claims Defendant made and is making regarding EOS Lip Balm are unfair or deceptive, specifically, whether EOS Lip Balm is healthy and safe and contains no known allergens;

(d)    Whether Defendant breached a duty owed to consumers by failing to warn consumer that EOS Lip Balm can and was and is known to cause significant adverse health consequences based the on ingredients, the combination of ingredients, and based on EOS advertising pushing users to constantly and consistently apply what is calls it refers to as its "tasty" lip balm product;

(e)    Whether Defendant is supplying EOS lip balm in accordance with its representations including whether EOS lip balm provides health and safe moisturizing qualities for the lips;

(f)    Whether Defendant knew at the time the consumer transactions took place that the consumer would not receive the benefit of EOS was claiming consumers would receive;

(g)    Whether Defendant knowingly made a misleading statement in connection with a consumer transaction that the consumer was likely to rely upon to his detriment;

(h)    Whether Defendant knew or should have known that the representations and advertisements regarding EOS Lip Balm were unsubstantiated, false and misleading;

(i)    Whether Defendant has breached express and implied warranties in the sale and marketing of EOS Lip Balm;

(j)    Whether Defendant has been unjustly enriched by the sale of EOS Lip Balm to the Plaintiff and Class;

(k)    Whether the Plaintiff and the Class members that purchased EOS Lip Balm suffered monetary, general, consequential, and special damages and, if so, what is the measure of those damages; and

(l)    Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

///

///

67.     Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members purchased EOS Lip Balm that were designed, tested, manufactured, marketed, advertised, warranted and/or sold, and placed in the stream of commerce by EOS. Plaintiffs and all other Class Members purchased EOS Lip Balm that could not perform anywhere near advertised. The nature of the misrepresentation is the same for the Plaintiff and all Class Members, even if they purchased different types or flavors of EOS Lip Balm.

68.     The factual bases of Defendant's misconduct are common to the Class Members and represent a common thread of deceptive advertising and breach of warranty resulting in injury to all Class Members. Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for themselves and all other Class Members. The central question of whether Defendant's representations are accurate and truthful is common to all Class Members and predominates over all other questions, legal and factual in this litigation.

69.     Plaintiff is an adequate representative of the proposed Class because she is a Class Member and does not have interests that conflict with those of the other Class members she seeks to represent. Plaintiff is represented by experienced and able counsel, who has litigated numerous class-action lawsuits, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed Class. Plaintiff and her Counsel will fairly and adequately protect the interests of the Class Members.

70.     A class action is the superior available method for the efficient adjudication of this litigation because:

a.  The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendant;

b. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

c. Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and

d. The claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

71.    A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendant acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff, on

behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

## **FRAUDULENT CONCEALMENT**

72.     Defendant was and remains under a duty to Plaintiff and the putative class to disclose the facts, as alleged herein.  The duty to disclose the true facts arises because, as the manufacturer, Defendant is in a superior position to know the true character and quality of its products and the true facts are not something that Plaintiff and putative class members could, in the exercise of reasonable diligence, have discovered independently prior to purchasing EOS Lip Balm.

73.     Defendant intentionally concealed and/or failed to disclose the shortcomings and dangers of EOS Lip Balm for the purpose of inducing Plaintiff and putative class members to act thereon.

74.     Plaintiff and putative class members justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material facts as evidenced by their purchase of EOS Lip Balm.  Had they known of the true character and quality of EOS Lip Balm, Plaintiff and putative class members would not have purchased (or would have paid less for) the Product.

75.     As a direct and proximate cause of Defendant's misconduct, Plaintiff and putative class members have suffered actual damages. Defendant's conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

## **FIRST CAUSE OF ACTION**

### **For Violations of Consumers Legal Remedies Act**

### **California Civil Code §§ 1750, *et seq*.**

### **(On Behalf of the Putative California Subclass)**

76.     Plaintiff restates each and every paragraph of this Complaint as if fully set forth herein.

77.    This cause of action is brought pursuant to California Consumers Legal Remedies Act, §§ 1750, *et. seq* (the "CLRA").

78.    Plaintiff is a consumer as defined by the CLRA, Defendants are a supplier or seller as defined by the CLRA.  Plaintiff is further given the rights to bring the suit himself under CLRA §1780 and on behalf of the class under §1781.

79.    Defendant's conduct described herein involves consumer transactions as defined in CLRA.

80.    Defendant violated the CLRA by engaging in the following practices proscribed by the California Consumers Legal Remedies Act §1770(a)(2)(3)(5)(7)(8) and (9) and in consumer transactions with the Plaintiff and the Class, which were intended to result in, and did result in, the sale of EOS Lip Balm to the Plaintiff and Putative Class:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services.

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another.

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(8) Disparaging the goods, services, or business of another by false or misleading representation of fact.

(9) Advertising goods or services with intent not to sell them as advertised.

81.    Plaintiff and the Class reserve the right to allege further violations of California's CLRA as EOS conduct is ongoing.

### SECOND CAUSE OF ACTION

**For Violations of Unfair Business Practice Act**

**California Business and Professions Code §§ 17200 *et seq.***

**(On Behalf of the Putative California Subclass)**

82.    Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

83.    For the reasons discussed below, Defendant has engaged in unfair competition and prohibited activities.  Unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Bus. & Prof. Code §17200 and specifically §17508(a) because defendants made: "false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact."

84.    Plaintiff and the Class seek equitable relief and to enjoin Defendant on the terms that the Court considers reasonable.

85.    Pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq*., Plaintiff and the Class seek an order enjoining the above-described wrongful acts and practices of the

Defendant and for restitution and disgorgement.

86.    Pursuant to Cal. Bus. & Prof. Code §§17200 *et seq.,* this Complaint will be served upon the California Attorney General, and Director of Consumer Affairs.

### THIRD CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of the National Class or, alternatively,

### the Putative California Subclass)

143.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

144.    Plaintiff and each member of the putative class formed a contract with Defendant at the time they purchased EOS Lip Balm. The terms of the contract included the promises and affirmations of fact made by Defendant on the label of each of EOS Lip Balm, specifically that the product would nourish lips in a health and safe manner. Defendant's branding, labels, and advertising constitute express warranties, and are part of the basis of the bargain and a standard contract between Plaintiff, members of the putative class, and Defendant.

145.    Alternatively, privity was established between Plaintiff and members of the putative class and Defendant and/or its agents because Defendant was substantially if not completely responsible for directly promoting and marketing Defendant's EOS Lip Balm to Plaintiff and the putative class members which led to Plaintiff and putative class member's purchase of the product. By virtue of this direct promotion and marketing to Plaintiff, Defendant expressly warranted EOS Lip Balm's attributes and benefits to members of the putative class.

146.    Defendant breached the terms of the express warranty by failing to provide a product that provided the benefits promised and which caused harm and/or had the potential to cause harm.

147.    As a result of Defendant's breaches of its express warranties, Plaintiff

and the putative class have been damaged in an amount to be proven at trial.

148.   By reason of the foregoing, Plaintiff, on behalf of herself and all others similarly situated, demand judgment against Defendant for damages, including compensatory, incidental and consequential damages for itself and each member of the putative classes.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty

### (On Behalf of the National Class or, alternatively,

### the Putative California Subclass)

149.   Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

150.   Defendant manufactured, designed, formulated, tested, packaged, labeled, produced, created, made, constructed, assembled, marketed, advertised, distributed and sold EOS Lip Balm as safe for use by the public at large, including Plaintiff, who purchased EOS Lip Balm. Defendants knew the use for which their product was intended and impliedly warranted the product to be of merchantable quality, safe and fit for use.

151.   Plaintiff reasonably relied on the skill and judgment of the Defendant, and as such their implied warranty, in using EOS Lip Balm.

152.   Contrary to same, EOS Lip Balm was not of merchantable quality or safe or fit for its intended use, because it is unreasonably dangerous and unfit for the ordinary purpose for which it was used.

153.   As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendant, Plaintiff suffered profound injuries, required medical treatment, and incurred and continues to incur medical expenses.

154.   Plaintiff demands judgment against Defendant for compensatory, statutory and punitive damages, together with interest, costs of suit attorneys' fees and all such other relief as the Court deems appropriate pursuant to the common law

and statutory law.

## FIFTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the National Putative Class or, alternatively,**

**the California Subclass)**

155.   Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

156.   Plaintiff conferred a tangible economic benefit upon Defendants by purchasing EOS Lip Balm. Plaintiff and members of the Class would have expected remuneration from Defendant at the time this benefit was conferred had they known that the Product did not perform as promised and had the product warned of its potential adverse effects.

157.   As a result of Defendant's deceptive, fraudulent, and misleading packaging, advertising, marketing and sales of its EOS Lip Balm, Defendant was enriched, at the expense of the Plaintiff and each member of the putative class, through the payment of the purchase price for EOS Lip Balm products.

158.   Under the circumstances, it would be against equity and good conscious to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and members of the putative class in light of the fact that the EOS Lip Balm purchased by Plaintiff and members of the putative class were not as Defendant purports them to be, as set forth more fully above.

159.   It would thus be unjust and inequitable for Defendant to retain the benefit without restitution or disgorgement of monies paid to Defendant for EOS Lip Balm products, or such other appropriate equitable remedy as appropriate, to the Plaintiff and other members of the putative class.

///

///

## SIXTH CAUSE OF ACTION

### FRAUD – INTENTIONAL MISREPRESENTATION AND

### CONCEALMENT OF FACT

**(On Behalf of the National Putative Class or, alternatively,**

**the California Subclass)**

160.  Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

161.  Defendant intentionally, willfully, falsely, and knowingly uniformly misrepresented material facts in writing that relate to the character and quality of EOS Lip Balm. Specifically, Defendant intentionally and willfully misrepresented that EOS was safer and healthy, and failed to disclose that it poses health risks on websites, in various media advertising, and at point of sale materials disseminated or caused to be disseminated by Defendant.

162.  Defendant's uniform written misrepresentations were made with the intent that the general public, including Plaintiff and the putative class, would rely upon them. Defendant's representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof, and gave Defendant an unjust advantage and caused a loss to Plaintiff and putative class members. The Defendant's claims of superior health qualities, purity, safety, and flavor, are so central to the consumer's selection of EOS Lip Balm that the Defendant knew and intended that consumers would rely on those misrepresentations in determining whether to purchase EOS Lip Balm instead of the less expensive alternatives.

163.  In actual and reasonable reliance upon Defendant's misrepresentations, Plaintiff and putative class members purchased EOS Lip Balm for its intended and reasonably foreseeable purposes. Plaintiff and putative class members were unaware of the true facts concerning the effectiveness and health risks of EOS Lip Balm, which were concealed from the Plaintiff and the putative class members.  If Plaintiff

and putative class members had been aware of the concealed facts, Plaintiff and the putative class members would not have purchased EOS Lip Balm at all or for the price paid.  Plaintiff's and putative class members' reliance on the representations of the Defendant was reasonable.

164.   Defendant misrepresented material facts with the intent to defraud Plaintiff and the putative class members. Plaintiff and the putative class members were unaware of the intent of Defendant and relied upon these representations in agreeing to purchase EOS Lip Balm.

165.   In actual and reasonable reliance upon Defendant misrepresentations, Plaintiff and putative class members purchased EOS Lip Balm and did not benefit from the Product as represented, the direct and proximate result of which was injury and harm to Plaintiff and putative class members because:

> (a)   they would not have purchased EOS Lip Balm if the true facts concerning its effectiveness had been known;
>
> (b)   they paid a price premium due to the mislabeling of EOS Lip Balm
>
> (c)   EOS Lip Balm did not (and cannot) perform as promised.

## SEVENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
**(On Behalf of the National Class or, alternatively,**
**the California Putative Subclass)**

166.   Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

167.   Defendant has refused to act on grounds generally applicable to the Injunctive Relief sought by Plaintiffs and other members of the putative class and subclass, thereby making final injunctive relief appropriate.

///

168.   Defendant's conduct, as more fully set forth herein, both in the past and through the present day, has demonstrated a willful disregard for the health and safety of consumers and in will disregard with educating consumers on the potential dangers associated with the product.

169.   Defendant persists in its deceptive and unfair marketing and sales practices concerning the Product to the detriment of consumers across the country, including the class and putative class.

170.   If Defendant is allowed to continue with these practices, consumers, including the Plaintiff and the putative class and subclass will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendant's improper conduct concerning its marketing and sale of the Product.

171.   Plaintiff and the putative class and subclass, are therefore, entitled to an injunction requiring Defendant its unfair and deceptive practices relating the marketing sale of the Product, as alleged herein, including the effects thereof.

172.   Plaintiff and the putative class and subclass seek a Court Order requiring Defendant to do the following:

(a)   discontinue advertising, marketing, packaging and otherwise representing its products are safe and healthy without providing appropriate warnings, disclosures and instructions of use regarding the product.

(b)   undertake an immediate public information campaign to inform Plaintiff and putative class and subclass, of the truth about Defendant's products and Defendant's prior practices relating thereto; and

(c)   correct any erroneous impression derived concerning the nature, characteristics, or qualities of EOS Lip Balm, including without limitation, the placement of corrective advertising and providing written notice to the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, the representative Plaintiff, on behalf of himself and the Members of the Class defined herein, prays for judgment against the Defendant as follows:

A.   For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B.   For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C.   For an order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of Defendant concerning, relating to, or involving the health and safety of EOS Lip Balm products;

D.   For an order barring Defendant from destroying or removing any computer or similar records which record evidence related to the purported health and safety of EOS products;

E.   For an order barring Defendant from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

F.   For an award of compensatory damages in the amount to be determined for all injuries and damages described herein;

G.   For an award of punitive damages to the extent allowable by law,

in an amount to be proven at trial;

H. Awarding restitution and disgorgement of Defendant's revenues to the Plaintiff and the proposed Class Members;

I. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them, restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by the Court to be wrongful;

J. Ordering Defendant to engage in a corrective advertising campaign;

K. Awarding attorney fees and costs; and

L. Providing such other relief as may be just and proper.

Dated: January 12, 2016          GERAGOS & GERAGOS, APC


                                  /s/ Mark J. Geragos
                                 MARK J. GERAGOS
                                 BEN J. MEISELAS
                                 FRIDA HJORT
                                 Attorneys For Plaintiff Rachael Cronin
                                 On Behalf Of Herself And All Others
                                 Similarly Situated

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


Dated:  January 12, 2016                    GERAGOS & GERAGOS, APC



                                             /s/ Mark J. Geragos
                                            MARK J. GERAGOS
                                            BEN J. MEISELAS
                                            FRIDA HJORT
                                            Attorneys For Plaintiff Rachael Cronin
                                            On Behalf Of Herself And All Others
                                            Similarly Situated