**GERAGOS & GERAGOS**
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS    SBN 108325
BEN J. MEISELAS    SBN 277412

**LEVI & KORSINSKY LLP**
LORI G. FELDMAN (*pro hac vice*)
lfeldman@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Plaintiffs*
*and the [Proposed] Class*

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Rachael Cronin, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EOS Products, LLC,<br><br>Defendant. | Lead Case No. 2:16-cv-00235-JAK-JEM<br><br>**PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date:  December 19, 2016<br>Time:  8:30 a.m.<br>Room:  750<br>Judge:  Hon. John A. Kronstadt |

06577-00003/8482717.1

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

Pursuant to this Court's Order dated December 19, 2016, the parties hereby jointly provide the following supplemental responses in further support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement:

1) Describe "the process and language that will be used with respect to the disclosure to putative class members of issues that could arise should a health insurer assert a claim as to a settlement amount to be paid to a class member who received medical treatment for which an insurer made a payment."

RESPONSE: To ensure putative class members understand that acceptance of settlement proceeds might affect the class member's obligations to insurers for previously reimbursed medical expenses, the parties will amend the Settlement Agreement to add the following language to Part VIII of the agreement:

> 90. <u>Acknowledgement of Insurers' Interests.</u>  The Parties make no representations or warranties with respect to any obligations a Settlement Class Member may have to his or her insurer as a result of any payment made to a Settlement Class Member under this Settlement Agreement, or whether such payments constitute reimbursement of medical expenses.  Any such obligations shall be the sole responsibility of the Settlement Class Member.  The Parties do not intend for this Settlement Agreement to affect an insurer's interest, if any, in any monetary benefits paid pursuant to this Settlement Agreement.

The parties will file an Amended Settlement Agreement no later than February 3, 2017 to reflect this addition. In addition to including this language in the Amended Settlement Agreement, it will also be included with any checks issued to Settlement Class Members under the Agreement.

2) State "whether the evidence to date from putative class members or other

sources supports the reasonableness of the $4000 cap on arbitration awards to those who claim medical harm."

RESPONSE: To date, the parties have not received evidence that any settlement class member intends to claim more than $4,000 in alleged damages. Further, the $4,000 cap on potential arbitration awards is reasonable in context of the other claims options available to class members. The parties have established a tiered structure in which the settlement award available varies according to the quantum of proof and other procedural requirements to claim the award. The $4,000 award is available to class members through a streamlined arbitration procedure in which EOS has agreed to forego discovery, cross-examination, or a hearing—protections to which EOS would otherwise be entitled and that ease a settlement class member's ability to claim this substantial monetary award. For example, even in alternative proceedings such as small claims court, a class member would at minimum be required to appear for hearing and would be subject to questioning by the presiding court. Consistent with this tiered approach in which procedural and proof requirements vary with the amount of the award, in the event a settlement class member believes that he or she can establish entitlement to an award greater than $4,000, that individual can opt out of the settlement and pursue unlimited recovery in an individual action.

The limitations imposed by the Settlement Agreement on the inquiries of the arbitrator to determine liability and damages inure to the benefit of arbitration claimants and may allow an award not otherwise available in court proceedings. Each of EOS's lip balm products has been subjected to and passed a Human Repeat Insult Patch Test, which is the industry standard for hypoallergenic products. Courts have held that "[d]amages for injuries is denied when the use of a product is safe for the vast majority of consumers . . . When a manufacturer places a product on the market, knowing that a few, not in an identifiable class, may suffer allergic reactions

-2-

1  not common to the normal person, the injured party cannot recover." *Tayar v. Roux Laboratories, Inc.*, 460 F.2d 494, 496 (10th Cir. 1972). *See also Daley v. McNeil Consumer Products Co.*, 164 F. Supp. 2d 367 (S.D.N.Y. 2001) ("There is no duty to warn of potential reactions unless a product contains an ingredient to which a substantial number of the population are allergic."); *Adelman-Tremblay v. Jewel Companies, Inc.*, 859 F.2d 517 (7th Cir. 1988) (""There is, however, in the majority of jurisdictions no duty to warn of the possibility of a rare and unusual allergic reaction. . . . Another way of stating this rule is that the plaintiff's own idiosyncrasy or allergy is the proximate cause of his injury, not the failure to warn."); *Mountain v. Procter & Gamble Co.*, 312 F. Supp. 534 (E.D. Wis. 1970) ("A further reason for not finding a duty to warn under the circumstances of this case is the fact that credible evidence has indicated that there is no reasonable way of foretelling who will suffer an allergic reaction to the defendants' product."). Here, on the issue of causation, the arbitrator will examine whether the damages claimed by an arbitration claimant would not have occurred but for the use of the EOS lip balm. This narrowed inquiry may allow an arbitration claimant to establish liability where the claimant would have otherwise failed to show proximate cause in court.

3)   Provide "greater details as to the notice to putative class members through the use of social media, why this form of notice is likely to be effective."

RESPONSE:   The parties are concurrently submitting a supplemental declaration from Steven Weisbrot of Angeion Group, LLC, the proposed settlement administrator, which provides further details regarding the proposed notice plan. Included as Exhibit 5 to the Weisbrot declaration is an image of the notice that will appear on various websites as part of the notice plan. Included as Exhibit 3 to the Weisbrot declaration are images showing how this type of notice will appear on websites visited by settlement class members. These images are from a similar notice plan approved in *Barron v. Snyder's-Lance, Inc.*, Case No. 0:13-cv-62496

-3-

(S.D. Fla.).

As explained further in the Weisbrot declaration, the likely composition of the settlement class here was profiled using information from a database used by advertising agencies and other communications professionals to understand the socio-economic characteristics, interests and practices of a target group. Angeion reviewed the media quintiles for the settlement class target group, which revealed that members of the settlement class spend a heavy amount of time on the Internet compared to the general population, averaging 21 hours per week on the Internet. In light of this data, a media plan comprised of advanced digital tactics will provide the best practicable notice to the settlement class. The notice here will appear on websites settlement class members are likely to visit, such as *Vanity Fair*, *Vogue*, *Life & Style Magazine*, *Marie Claire*, *Elle* and *Cosmopolitan*, amongst others. To choose the websites on which the notice will appear, a focus will be placed on purchase data targeting EOS specifically to ensure that likely settlement class members are exposed to the notice documents while simultaneously minimizing the chance that notice is misdirected to individuals who are unlikely to be members of the class. Based on this approach, individuals who meet the relevant criteria based on their demographics and Internet search history will see a banner ad disclosing the settlement and directing the viewer to the case website.

The Internet banner notice portion of the notice program will be implemented using a four-week desktop and mobile campaign, and is designed to generate approximately 21,115,000 display impressions. The notice program is designed to deliver an 80% reach with an average frequency of 3.0 times each. According to the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* ("The Checklist"): "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%,"

which the proposed notice plan would accomplish. In addition to the numerous courts that have approved similar forms of notice, the Judicial Conference Committee on Rules of Practice and Procedure recently approved publication of proposed amendments to Fed. R. Civ. P. 23, specifically allowing for notice to be carried out by "electronic means, or other appropriate means…"

4) Provide "more specifics as to the role of Judge Lichtman, if any, in facilitating the parties' agreement to the particular, final elements of the settlement agreement."

RESPONSE: Following the December 19, 2016 hearing in this matter, Proposed Class Counsel Mark J. Geragos spoke with Hon. Peter D. Lichtman (Ret.) regarding the mediation process and the parties' resulting settlement agreement. Judge Lichtman stated that he believed the negotiations he facilitated were conducted at arms-length by experienced and capable attorneys, and that the settlement itself was an appropriate resolution designed to adequately protect the interests of putative class members nationwide.

5) Provide "greater details as to estimated dollar value of the proposed injunctive relief."

RESPONSE: The settlement agreement specifies a program of injunctive relief including disclosures on EOS's website, as well as disclosures on EOS Smooth Sphere lip balm packaging, where the product's formula is not otherwise altered to exclude certain ingredients. The primary intended value of this relief – preventing any of the issues alleged here from arising again in the future – would be realized prospectively. An exact dollar value for this would be difficult to estimate, but plaintiffs here allege thousands of consumers were injured and claim substantial monetary damage resulted from the alleged injuries, making the intended value of the injunctive relief proposed here in preventing potentially thousands of claimed injuries from occurring in the future substantial.

It is difficult at this time to assign with any precision a dollar value to the cost

-5-
PLAINTIFFS' SUPPLEMENTAL SUBMISSION
ISO PRELIMINARY APPROVAL

EOS will incur in implementing the injunctive relief provisions of the settlement. However, costs of any added disclosures to packaging would include artwork updates across all label types, which could affect up to 250 labels. Formula changes would require research and development and product testing expense. These costs would be substantial, potentially tens of thousands of dollars or more.

6) Provide "greater details as to the role of each of the class representatives and why the same $5000 payment is appropriate given the range of hours worked by those individuals."

RESPONSE:

### A. *Plaintiff Rachel Cronin*

Ms. Cronin's bravery and selflessness initiated this action when she contacted Geragos & Geragos, APC in December 2015 and volunteered to initiate class action proceedings in California on behalf of all affected consumers. Since late 2015, Ms. Cronin has actively participated in all aspects of this litigation by documenting her injuries, cataloging her use of the product, gathering documents related to her acquisition of the product, communicating with her attorneys, and, significantly, by publicly presenting herself as the face of her action—as well as other similar actions—by making television appearances and presenting herself to the media as a consumer advocate on this issue.

Ms. Cronin has risked significant public backlash by representing affected consumers in this litigation. Additionally, Ms. Cronin has foregone a greater individual award in favor of vindicating the rights of all consumers affected by the products at issue.

### B. *Plaintiff Ashundrae Everett*

Ms. Everett has tirelessly documented the effects of the product, gathered documents related to her purchases, and assisted her attorneys in gathering information related to her case. Like other representatives, Ms. Everett has also

-6-

foregone greater individual recovery in favor of advocating for all affected consumers, and has endured significant risk of personal embarrassment by publicly disseminating images of her affliction.

### C. *Plaintiff Samantha Tipirneni*

Plaintiff Samatha Tipirneni is a physician who conducted significant research, review, and analysis of her problems and the product. She closely followed the case, reviewed and analyzed all significant case documents in great detail, produced significant documentation of her acquisition and use of the product, and was very meticulous in performing all of her tasks and duties as a class representative. She took her role as a class representative very seriously and would often have multiple rounds of questions for her attorney as she worked through the tasks and documents.

Significantly, Ms. Tipirneni risked potential harm to her professional reputation by advocating for all affected consumers. In January 2016, the *Chicago Tribune* published her name as part of its coverage of the case, and Ms. Tipirneni nevertheless continued to pursue her action in the face of potential harm to her practice.

### D. *Plaintiff Nicole Emily Caggiano*

As with other representatives, Ms. Caggiano has documented her physical affects, gathered receipts, and assisted her attorneys in gathering information related to her case. Ms. Everett has also foregone greater individual recovery in favor of advocating for all affected consumers.

### E. *Plaintiff Carolyn Bevins*

Due to Ms. Bevins' background in law, she has participated in the instant litigation to an exceptional degree. Initially, she was reluctant to become a class representative, and performed significant research prior to seeking counsel—she analyzed the claims of others who experienced problems with the EOS lip balm, compared those claims to her own experiences, and discussed the issues with

-7-

numerous people including attorneys. She investigated the counsel handling the case in California and as well as her Ohio counsel. She also researched the ingredients and various theories as to what was causing harm to the lips of people who used EOS lip balms. She also visited the doctor twice to determine if there might be some alternative cause of the harm. Finally, she reviewed the California complaint and determined that the experiences of Ms. Cronin were so similar to her own that she would contact the law office of Geragos & Geragos to inquire about joining the litigation.

Since she resided in Ohio, Geragos and Geragos referred Ms. Bevins to numerous Ohio law firms. After several long discussions with attorney Patrick Warner, she chose to file a class action in the Southern District of Ohio, Eastern Division with herself as the proposed class representative. Ms. Bevins spent many hours on the phone with attorney Patrick Warner from Leist Warner discussing the duties and risks associated with being a class representative, including the risk that her life and medical history may be made public through discovery.

Ms. Bevins then devoted herself to searching for and producing photos and documents for her case. She took photos, kept documents, obtained statements from witnesses, and worked closely with her attorney to utilize those documents and photos in the litigation. She also devoted significant effort to reviewing and editing the pleadings in her matter, as well as studying the pleadings from the California litigation. She also reviewed the other documents that were filed with this Court, including the settlement agreement and amendments thereto.

F.   *Plaintiff Melissa Menz*

Plaintiff Melisa Menz is seeking a modest $5,000.00 service award for her efforts in bringing this action. Mrs. Menz undertook the responsibilities and attendant risks of bringing a class action, and has spent time and energy assisting counsel with developing facts pertaining to her claims, including investigating her

claims, multiple telephone conferences, e-mails, and meetings, over the course of more than a year. Mrs. Menz also spent substantial time at the outset of the litigation researching the product, its ingredients, as well as other similar incidents of allergenic affects, and assisted in providing information for the factual components of her complaint. Additionally, Mrs. Menz carefully reviewed the Settlement documents to understand the terms of the Settlement and the benefits to the Class. Class Members would not have received any settlement benefits but for Mrs. Menz and the other Class Representatives' efforts.

### G. Plaintiff Maria Del Carmen Ballenilla-Blondett

A $5,000.00 award to Ms. Ballenilla-Blondett is appropriate given her work with her attorneys to gather evidence to file her complaint. Ms. Ballenilla-Blondett took time out of her personal life as a wife and mother to assist her counsel with drafting and verifying the to the facts in the complaint. Ms. Ballenilla-Blondett also had to provide pictures of the harm caused to her face due to the EOS products. Ms. Ballenilla-Blondett had to suffer this embarrassment to be a class representative in this case. Ms. Ballenilla-Blondett is more than the average class member. She has always made herself easily available to her counsel and has also been patient during the process. Ms. Ballenilla-Blondett is deserving of the $5,000 payment as a Class Representative.

### H. Plaintiff Marylou Gilsleider

Prior to initiating her class action lawsuit on February 18, 2016, putative class representative, Marylou Gilsleider ("Plaintiff Gilsleider") spent considerable time and money consulting with her pharmacist on two separate occasions regarding the adverse reactions she experienced from using EOS's lip balms. As a result of the adverse reactions she experienced from EOS's lip balms, Plaintiff Gilsleider's pharmacist advised her to purchase different medicated lip balms to prevent further damage and to allow her lips and rash around her lips to heal. Additionally, Plaintiff

Gilsleider thought she may have had a cold sore so she went to the store to purchase cold sore medications. Plaintiff Gilsleider conducted her own independent online research to determine whether she was the only person experiencing these adverse reactions by using EOS's products, and she determined that she was not alone and that other consumers were experiencing the same fate. Soon after, Plaintiff Gilsleider contacted her current attorneys and visited their Newport Beach office for an initial consultation and advice. Plaintiff Gilsleider relayed the adverse reactions she experienced from EOS's products, doctor visits, and research she performed online, and inquired what her potential legal options are against EOS. Plaintiff Gilsleider and her counsel discussed her potential claims, remedies, and potential negative ramifications she might face if she sued EOS and lost in court. After considering her legal options and the benefits and costs of proceeding with litigation against EOS, Plaintiff Gilsleider chose to become a named plaintiff in a class action lawsuit against EOS and seek recovery not only for herself, but similarly situated consumers.

      To prepare for litigation, Plaintiff Gilsleider produced to her counsel photos of the injuries to her lips and rash around her lips, the EOS lip balms she purchased that caused the adverse reactions, proof of purchases, and additional factual information needed to draft the class action complaint. Besides marshalling evidence to prepare for litigation, Plaintiff Gilsleider reviewed the class action complaint to ensure its accuracy, provided feedback, and consented to its filing, despite the stigma associated with being a named plaintiff in a class action. Throughout the litigation, Plaintiff Gilsleider maintained contact with her counsel through telephone calls and email communications to get status or to provide additional information requested by her counsel. Plaintiff Gilsleider also reviewed the settlement agreement, raised questions regarding the settlement and its impact on her and other putative class members, and after she was satisfied it was fair and

-10-

reasonable, executed the document. To date, Plaintiff Gilsleider remains eager and available to do what is necessary to bring this action to a conclusion.

### I. *Plaintiffs Yokie Renee Ivy, Samantha Santiago, Amanda Jones, and Larissa Gannuccelli*

Plaintiffs Yokie Ivy, Amanda Jones, Samantha Santiago, and Larissa Gannuccelli each worked with counsel at Levi & Korsinsky LLP to assist in the investigation, litigation, and proposed settlement of this matter. Prior to the filing of their respective complaints, plaintiffs Ivy, Jones, Santiago, and Gannuccelli described the events surrounding their purchase, use, and experience with EOS Lip Balm. Specifically, they described where they purchased the products, when and how they purchased the products, what motivated them to purchase the products, and what representations they reviewed and relied on when making their purchases.

Plaintiffs also explained to their counsel in detail the circumstances surrounding their use of EOS, the reactions they experienced, and the actions they subsequently took. They also searched for relevant documentation, including receipts and remaining product. Ms. Santiago complained directly to EOS prior to contacting her attorneys and searched for related email correspondence. Ms. Ivy contacted her doctor several times, and traveled to and from her doctor's office in an effort to obtain relevant documentation. Ms. Jones provided numerous photographs to her counsel, showing the rash and visible dryness around her lips, which she consented to include in her proposed class action complaint. Plaintiffs also discussed with their counsel their responsibilities as proposed class representatives, including their obligations to other class members.

Once their attorneys prepared the putative class action complaints, plaintiffs Ivy, Jones, Santiago, and Gannuccelli each reviewed the complaints for accuracy, gave feedback to their counsel, and approved the complaints prior to filing. During the course of the litigation, they kept in contact with their attorneys, conferring with

them by phone and email to keep informed about the status of the case and the negotiations relating to the proposed settlement. When appropriate, they informed counsel of additional facts for consideration in connection with the settlement negotiations. Plaintiffs Ivy, Jones, Santiago, and Gannuccelli each discussed the Settlement with counsel, reviewed the agreement, and gave their approval and signature prior to filing the Motion for Preliminary Approval.

In connection with the Motion for Preliminary Approval, plaintiffs Ivy, Jones, Santiago, and Gannuccelli each gave a conservative estimate of the time they had spent working with their lawyers on the case. In addition to the time that plaintiffs Ivy, Jones, Santiago, and Gannuccelli previously submitted to the Court, Ms. Jones, Santiago, and Gannuccelli spent additional time (up to .5 hours) purchasing over the counter products to treat their reactions and Ms. Ivy estimates she spent approximately 6 hours on doctor visits, 4 hours purchasing medications on different occasions, and 6 hours conducting internet research regarding her reaction. Had the parties not agreed to the Settlement, plaintiffs Ivy, Jones, Santiago, and Gannuccelli were willing and prepared to take part in discovery, including taking part in a deposition.

7) Explain "why the notice plan does not include traditional advertising, including in media in which Defendant advertises, or disclosures or links on Defendant's website."

RESPONSE: Although print media it is not the primary form of advertising under the proposed notice plan, the plan does include 1/4 page ads in the California regional edition of *USA Today*, to run on four consecutive weeks. Additionally, the notice plan includes a statement on EOS's website regarding the settlement, which will include a link to the case website containing the settlement information. These forms of notice were not included in calculating the 80% reach of the proposed notice plan.

The proposed notice plan mirrors the form of advertising used by EOS to target its customers. EOS's primary form of consumer advertising is digital, as opposed to traditional print advertising. As explained in the declaration of Steven Weisbrot of Angeion Group, LLC, the proposed settlement administrator, the digital notice plan offers the best notice practicable under the circumstances in light of the characteristics, interests and practices of the settlement class. The settlement administrator has reviewed the media quintiles for the settlement class target group, which revealed that members of the settlement class spend a significant amount of time on the Internet compared to the general population, averaging 21 hours per week on the Internet. Unlike print media, the digital media program will allow the settlement administrator to target potential settlement class members with tailored communications. Digital notice plans like the one proposed here have been approved by many courts. For example, in *Pappas v. Naked Juice,* Case No. 11-cv-08276 (C.D. Cal.), this Court approved a notice plan where the primary means for reaching class members was an Internet advertising campaign. Similarly, in *Edwards v. National Milk Producers Federation*, No. 11-cv-04766 (N.D. Cal.), the court approved a settlement that relied solely on publication notice by way of Internet search and banner display ads, as well as a press release. *See also Petersen v. CJ America, Inc.*, Case No. 3:14-cv-02570 (S.D. Cal.) (final approval granted for a settlement that utilized a notice program that relied solely on a publication notice program based heavily on Internet advertising).

8) Explain "how class members who elect to pursue the arbitration remedy will be able to establish causation given that discovery is not available as part of the arbitration process."

RESPONSE: Settlement class members electing to pursue the arbitration option will be permitted to offer any type of evidence to support their claims. This evidence could include medical reports, their own statements, the EOS

-13-

product they claim to have used, and any independent laboratory analysis conducted on the product. EOS's products and ingredient lists are both available publicly, and arbitration claimants can utilize this information in asserting their claims. Arbitration claimants thus have access to information reasonably necessary to establish causation without discovery from EOS.

9) "Because a final decision on any award of attorney's fees would be made in connection with any final approval of the settlement, [explain] whether an assessment of that issue should be deferred until data is available as to the number of each category of claims that have been made by putative class members."

RESPONSE: The claims deadline is prior to the Final Approval Hearing and the parties will file a status report prior to the hearing containing the data as to the number of each category of claims that have been made by putative class members.

10) Describe "the status of the related proceedings in other Districts, including that those courts have been advised of the settlement process and the anticipated transfer of those actions to this District as part of that process."

RESPONSE: All of the courts that have pending similar cases against EOS by any of the named plaintiffs here have been advised of the settlement process and the anticipated transfers of those actions to this District as part of that process.

In addition to the *Cronin* and *Gilsleider* actions, the parties propose to resolve through the Settlement nine other putative class action lawsuits filed against EOS in other Districts. Class Counsel filed four of such actions in various jurisdictions. *See Tipirneni v. EOS Products, LLC*, No. 2:16-cv-02022-CSB-EIL (C.D. Ill.); *Everett v. EOS Products, LLC*, No. 8:16-cv-00140-JSM-TGW (M.D. Fla); *Bevins v. EOS Products, LLC*, No. 2:16-cv-00066-GCS-TPK (S.D. Oh.); *Caggiano v. EOS Products, LLC*, No. 1:16-cv-00408 (S.D.N.Y.). Each of these courts has been advised of the Settlement and the intent to consolidate those actions with the *Cronin*

action pending before this Court. Specifically, the *Tipirneni* court was advised of the settlement negotiations as early as February 11, 2016. *See* Notice of Settlement, Dkt. 5, No. 2:16-cv-02022-CSB-EIL. As requested by the parties, the court ordered a temporary stay of the action. The parties filed a further status report on March 11, 2016, and subsequently a Joint Status Report, Notice of Settlement and Stipulation of Dismissal for Purposes of Consolidation (Dkt. 9) on April 18, 2016. The parties requested dismissal of the case on the basis that, *inter alia*, it would be reinstituted as part of the approval of the class action settlement before this Court. *Id.* On April 19, 2016, the court terminated the *Tipirneni* matter. Similarly, on June 20, 2016, the parties to the *Everett* action filed a joint status report and motion to stay pending approval of the nationwide class settlement and advised the Court of their intent to consolidate the settled actions with *Cronin*, pending in this Court. *See* Dkt. 7, No. 8:16-cv-00140-JSM-TGW. The *Everett* case was ordered stayed and administratively closed on June 21, 2016. *See id.*, Dkt. 8. On January 23, 2017, the parties filed a further status report in *Everett* informing the court of the parties' intent to file, within twenty-one (21) days of an order granting preliminary approval of the Settlement, stipulated motions pursuant to 28 U.S.C. § 1404 to transfer the actions pending outside of the Central District of California to this Court for consolidation with the *Cronin* action. *See id.*, Dkt. 9. In the *Bevins* action, on March 28, 2016, the parties filed a Joint Motion to Stay, advising the court they had reached a settlement and would seek to consolidate all pending actions in this Court. *See* Dkt. 7, No. 2:16-cv-00066-GCS-TPK. The stay was granted on March 29. *See id.*, Dkt. 8. The parties have continued to file status reports in the *Bevins* action as requested by the court. The latest report filed on December 30, 2016, advised the Court that a motion for preliminary approval had been filed. *See id.*, Dkt. 14. The next status report is due to be filed by March 31. *See id.*, Dkt. 15.

The *Caggiano* action is pending along with two other related actions before Judge Andrew L. Carter in the Southern District of New York— *Gannuccelli v. EOS Products, LLC*, No. 1:16-cv-01358-ALC (S.D.N.Y.), filed by Levi & Korsinsky LLP, and *Ballenilla-Blondett v. EOS Products, LLC*, No. 1:16-cv-01219-ALC (S.D.N.Y.), filed by Napoli Shkolnik PLLC and Imbesi Law P.C. On March 24, 2016, the parties in *Ballenilla-Blondett* submitted a joint motion for a stay pending approval of the nationwide class settlement, advising the court of the intent to consolidate all pending actions along with the *Cronin* action in this Court. *See* Dkt. 7, No. 1:16-cv-01219-ALC. The parties in *Gannuccelli* and *Caggiano* were directed to state their positions on a stay for their actions. Plaintiff Gannuccelli advised the court that she did not support a complete stay of the action given that settlement negotiations were still underway at that time. *See* Dkt. 15, No. 1:16-cv-01358-ALC. However, plaintiff Gannuccelli and EOS continued to file regular status reports in the action, advising the court of the progress of the settlement negotiations and the filing of the Motion for Preliminary Approval of Settlement in this Court, seeking to settle all related actions. *See id.*, Dkts. 18-22. On January 20, 2017, the parties filed a further status report in *Gannuccelli* informing the court of the parties' intent to file, within twenty-one (21) days of an order granting preliminary approval of the Settlement, stipulated motions pursuant to 28 U.S.C. § 1404 to transfer the actions pending outside of the Central District of California to this Court for consolidation with the *Cronin* action. *See id.*, Dkt. 23. A substantially similar report was filed in the *Ballenilla-Blondett* action on January 20, 2017, and the *Caggiano* action on January 23, 2017. *See* Dkt. 16, No. 1:16-cv-01219; Dkt. 12, No. 1:16-cv-00408. On January 24, 2017, Judge Carter ordered the *Caggiano*, *Ballenilla-Blondett*, and *Gannuccelli* actions stayed for three months pending approval of consolidation and the proposed settlement. *See* Dkt. 13, No. 1:16-cv-00408. In the event that the Settlement has not been approved or the cases consolidated by April 30, 2017, the

parties are to submit a further status report by that date. *See id.*

Undersigned counsel, Levi & Korsinsky LLP, has also regularly filed status reports in the actions *Jones v. EOS Products, LLC*, No. 1:16-cv-00321-JKB (D. Md.), and *Santiago v. EOS Products, LLC*, No. 3:16-cv-00198-SRU (D. Conn.). Those courts have each been advised of the status of the settlement, the motion seeking preliminary approval of the settlement of all related actions, and the intent to stipulate to transfer the actions pursuant to 28 U.S.C. § 1404. *See* Dkt. 32, No. 1:16-cv-00321-JKB; Dkt. 35, No. 3:16-cv-00198-SRU. Further status reports are due to be filed with the courts overseeing the *Jones* and *Santiago* actions by March 31, 2017.

Finally, the parties in *Menz v. EOS Products, LLC*, No. 8:16-cv-00128-SDM-JSS (M.D. Fla.), filed by The Eggnatz Law Firm, agreed to a stay of the action pending approval of the Settlement and advised the court of the parties' intent to consolidate all related actions before this Court. *See id.*, Dkt. 8. The parties in *Menz* have continued to file status reports in the action. On December 27, 2016, the parties advised the court that a motion for preliminary approval had been filed and proposed that a further joint status report would be filed within seven (7) days of this Court's ruling on the motion for preliminary approval. *See id.*, Dkt. 15. On January 23, 2017, the parties advised the court of their intent to file, within twenty-one (21) days of an order granting preliminary approval of the Settlement, stipulated motions pursuant to 28 U.S.C. § 1404 to transfer the actions pending outside of the Central District of California to this Court for consolidation with *Cronin*. *See id.*, Dkt. 16.

ADDITIONAL SUBMISSIONS:

Plaintiffs' Counsel are also concurrently herewith submitting a supplemental excel spreadsheet that has the consolidated fees and costs for all attorneys organized by task.

-17-
PLAINTIFFS' SUPPLEMENTAL SUBMISSION
ISO PRELIMINARY APPROVAL

1 | Further, consistent with the discussion at the hearing, counsel for the parties are filing a stipulation and proposed order with respect to the timing of the proposed consolidation of the two actions pending before this Court.

Dated: January 24, 2017           Respectfully submitted,

**BISNAR | CHASE LLP**

By: */s/ Jerusalem F. Beligan*
BRIAN D. CHASE (164109)
bchase@bisnarchase.com
JERUSALEM F. BELIGAN (211258)
jbeligan@bisnarchase.com
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Telephone: 949/752-2999
Facsimile: 949/752-2777

**GERAGOS & GERAGOS APC**
MARK J. GERAGOS (SBN 108325)
BEN J. MEISELAS (SBN 277412)
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
geragos@geragos.com

**LEVI & KORSINSKY LLP**
LORI G. FELDMAN (*pro hac vice*)
lfeldman@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: 212/363-7500
Facsimile: 212/363-7171

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
JANINE L. POLLACK (*pro hac vice*)
pollack@whafh.com
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653

*Attorneys for Plaintiffs*