UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | | |
| Title | Rachael Cronin v. EOS Products, LLC | | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| --- | --- |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE Plaintiffs' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT (DKT. 47, 48) (DKT. 29) |
| --- | --- |

## I.    Introduction

On January 12, 2016, Rachel Cronin ("Cronin") brought this putative class action against EOS Products, LLC ("EOS" or "Defendant") (the "*Cronin* Action"). Complaint, Dkt. 1.[1] The Complaint asserts claims for products liability and false advertising. *Id.* EOS manufactures and sells lip and skin care products. On February 17, 2016, Marylou Gilsleider and Yokie Renee Ivy (the "*Gilsleider* Plaintiffs") filed a separate action against EOS based on similar factual allegations (the "*Gilsleider* Action"). Complaint, 16-cv-00283, Dkt. 1.

On November 1, 2016, plaintiffs in both actions (collectively "Plaintiffs") brought this Motion for Preliminary Approval of Proposed Class Action Settlement ("Motion"). Dkt. 29. Plaintiffs filed a Supplement to the Motion on November 28, 2016. Dkt. 32. On December 19, 2016, a hearing on the Motion was held and it was taken under submission subject to the submission of certain supplemental briefing. Dkt. 35. On January 24, 2017 and February 3, 2017, the parties did so. Dkts. 39, 40.

For the reasons stated in this Order, the Motion is **DENIED**.

## II.    Background

### A.    Factual and Procedural Background

#### 1.    The Class Actions that Have Been Filed

Both the *Cronin* Action and the *Gilsleider* Action involve the effects of the EOS Visibly Soft Lip Balm ("EOS Lip Balm"). Dkt. 1 ¶ 2; 16-cv-00283, Dkt. 1 ¶ 4. Both actions seek to certify a nationwide class and a California subclass of consumers who purchased EOS Lip Balm. In the *Gilsleider* Action a request has

---

[1] All citations are to the docket numbers in the *Cronin* Action (LA CV16-00235).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

been made to certify an Illinois subclass based on Defendant's alleged violation of an Illinois statute. Counsel for Cronin, counsel for the *Gilsleider* Plaintiffs as well as other counsel have filed putative class actions against EOS in other jurisdictions advancing claims similar to those presented here.[2] All of the pending actions identified in this Order are included in the proposed Settlement. The Plaintiffs contend that "[u]pon preliminary approval of the Settlement, Plaintiffs intend to transfer th[e]se Actions . . . to this Court pursuant to 28 U.S.C. § 1404 and will take steps to formally consolidate the Actions." Dkt. 29-1 at 13.

2.   The Allegations in the Complaints

Cronin's Complaint, which was filed on January 12, 2016, alleges that her use of EOS Lip Balm caused her "lips and surrounding skin area [to have] severe blistering and rashes" and "[severe] cracking on the edges causing flaking and bleeding from the cracks." Dkt. 1 ¶ 15-16. The Complaint advanced the following causes of action: (i) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; (ii) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (iii) breach of express warranty; (iv) breach of implied warranty; (v) unjust enrichment; and (vi) fraud. *Id.* at 1. The Complaint alleged that the advertising campaign of EOS was deceptive and unfair because it misrepresented EOS Lip Balm as having positive health and curative effects when it instead had negative or neutral health effects. *Id.* ¶¶ 42, 52, 57.

The *Gilsleider* Plaintiffs' Complaint, which was filed on February 17, 2016, makes the similar allegation that "EOS Lip Balm does not give consumers smoother, softer, more beautiful, or moisturized lips; rather, it results in painful and unsightly rashes, blisters, redness, cracking, and other signs of damage and irritation." Dkt. 11-2 (Ex. B ¶ 8). The Complaint advances the following causes of action: (i) violations of the CLRA; (ii) violations of the UCL; (iii) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (iv) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 *et seq.*; (v) breach of express warranty; (vi) breach of implied warranty of merchantability; (vii) unjust enrichment; (viii) strict products liability; and (ix) negligence. Dkt. 29-1 at 11.

3.   Procedural Background

On January 28, 2016, which was after the filing of the *Cronin* Action, but prior to the filing of the *Gilsleider* Action, counsel for Cronin and EOS announced a proposed settlement of that action and four others brought against EOS by parties represented by the same counsel who represents Cronin. Those actions are pending in district courts in Illinois, Florida, Ohio and New York. Dkt. 11-1 at 4-5.

---

[2] These cases include *Caggiano v. EOS Products LLC*, Case No. 1:16-cv-00408-ALC (S.D.N.Y. filed Jan. 19, 2016); *Menz v. EOS Products, LLC*, Case No. 8:16-cv-00128-SDM-JSS (M.D. Fla. filed Jan. 19, 2016); *Tipirneni v. EOS Products, LLC*, Case No. 2:16-cv-02022-CSB-EIL (C.D. Ill. filed Jan. 20, 2016); *Everett v. EOS Products, LLC*, Case No. 8:16-cv-00140-JSM-TGW (M.D. Fla. filed Jan. 20, 2016); *Bevins v. EOS Products, LLC*, Case No. 2:16-cv-00066-GCS-TPK (S.D. Oh. filed Jan. 22, 2016); *Jones v. EOS Products, LLC*, Case No. 1:16-cv-00321-JKB (D. Md. filed Feb. 4, 2016); *Santiago v. EOS Products, LLC*, Case No. 3:16-cv-00198-SRU (D. Conn. filed Feb. 5, 2016); *Ballenilla-Blondett v. EOS Products, LLC*, Case No. 1:16-cv-01219-ALC (S.D.N.Y. filed Feb. 17, 2016); *Gannuccelli v. EOS Products, LLC*, Case No. 1:16-cv-01358-ALC (S.D.N.Y. filed Feb. 22, 2016). Dkt. 29-1 at 9-11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
|  | SA CV16-00283 JAK (JEMx) |  |  |
| Title | Rachael Cronin v. EOS Products, LLC | | |
|  | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

On March 25, 2016, the *Gilsleider* Plaintiffs filed a notice of related cases, citing the *Cronin* Action. On March 29, 2016, the *Gilsleider* Action was transferred here pursuant to Local Rule 83-1.3.1. 16-cv-00283 Dkts. 25, 26. On April 15, 2016, the *Gilsleider* Plaintiffs filed a motion to consolidate that action and the *Cronin* Action. Dkt. 11. On May 9, 2016, Cronin filed a response to that motion (Dkt. 18), and on May 23, 2016, the *Gilsleider* Plaintiffs filed a reply. Dkt. 19. A hearing on that motion was held on June 27, 2016, during which the parties stated that they had almost reached a settlement agreement. Dkt. 21. The Court deferred issuing an order on that motion. *Id.* The parties were ordered to submit a notice of final settlement or other status by July 21, 2016. *Id.* The parties filed a status report stating that they had reached an agreement to resolve the matter and were finalizing a few outstanding issues. Dkt. 23.

On July 25, 2016, the hearing on the motion for preliminary approval was set for November 21, 2016, if the settlement discussions had resulted in an agreement. Dkt. 22. On August 22, 2016, the date by which the Parties were to file any motion for preliminary approval motion was extended October 24, 2016. Dkt. 24. On October 25, 2016, this deadline was extended to November 1, 2016, and the hearing on the motion for preliminary approval and consolidation motions was continued to December 19, 2016. Dkt. 26. On January 24, 2017, the parties filed a joint stipulation to consolidate the actions if and when preliminary approval of the settlement is granted. Dkt. 38.

### B.    The Proposed Settlement

#### 1.    Mediation and Settlement Negotiations

On January 13, 2016, EOS and counsel for Cronin began settlement discussions. Declaration of Ben J. Meiselas ("Meiselas Decl."), Dkt. 29-9 ¶ 4. On January 17, 2016, the parties to the *Cronin* Action selected the Judge Peter Lichtman (Ret.) to mediate the matter. *Id.* ¶ 6. The parties submitted mediation briefs to him on January 21, 2016. *Id.* ¶ 7. On January 22, 2016, the parties attended a daylong mediation session at which each side presented its positions to Judge Lichtman and "met and shared data regarding the product and its use, and evidence from each side." *Id.* ¶ 8. The parties were unable to reach a resolution, but established a framework for continued negotiations. *Id.* "Judge Lichtman agreed to continue to supervise and follow up with the parties' negotiations and settlement efforts." *Id.* The *Cronin* parties reached a consolidated nationwide settlement by March 10, 2016. *Id.* ¶ 9.

During the time when counsel for Cronin was negotiating the settlement with EOS, counsel for the *Gilsleider* Plaintiffs contacted counsel for Cronin. They discussed the terms of the Settlement that had been publicly announced on EOS's website. Declaration of Lori G. Feldman ("Feldman Decl."), Dkt. 29-5 ¶¶ 13-14. Counsel contend that from the time that the Motion for Consolidation was filed on April 15, 2016, "all Plaintiffs' Counsel worked cooperatively in order to achieve the best possible terms for all Plaintiffs and the Settlement Class." Dkt. 29-1 at 14. Counsel for Cronin, counsel for the *Gilsleider* Plaintiffs and EOS negotiated and eventually agreed to a proposed settlement in October 2016. Feldman Decl., Dkt. 29-5 ¶¶ 23-35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

    2.    <u>Terms of the Proposed Settlement</u>

        a)    Proposed Settlement Class

The Settlement Agreement was signed by the various parties between October 20 and October 31, 2016. Dkt. 29-3 at 27-39 (Settlement Agreement). The Proposed Settlement Class is defined as

> all persons residing in the United States who purchased EOS lip balm after January 1, 2009 and on or before the time of preliminary approval of the settlement by the Court, excluding EOS, EOS's officers, directors, employees, and legal representatives, EOS's subsidiaries, those who purchased the products for purpose of resale, (Ret.) Judge Peter D. Lichtman, the immediate family of Judge Lichtman, the Judges to whom these cases are assigned, the immediate family of the Judges to whom these cases are assigned, and any individuals who timely opt-out of the settlement.

Dkt. 29-3 ¶ 45.

The representatives of the Proposed Class are the plaintiffs who collectively are named in all of the cases that have been brought against EOS. They are Rachael Cronin, Ashundrae Everett, Samantha Tipirneni, Nicole Emily Caggiano, Carolyn Bevins, Melissa Menz, Maria Del Carmen Ballenilla-Blondett, Samantha Santiago, Amanda Jones, Marylou Gilsleider, Yokie Renee Ivy and Larissa Gannuccelli. Dkt. 29-1 at 7.

        b)    Proposed Non-monetary Relief in the Settlement

In the Settlement Agreement, EOS agreed to make several disclosures on its product packaging and website in exchange for the waiver of the claims of all class members who do not opt out of the settlement. As the Settlement Agreement stated:

> EOS has agreed to implement the following disclosures for products sold in the United States, beginning no later than one hundred and eighty (180) days following the Settlement Effective Date: (1) Smooth Sphere Lip Balm Packages sold in the United States, excluding any EOS Smooth Sphere Lip Balm for which the formula is altered after January 22, 2016 to exclude from its ingredients Sodium Hyaluronate, and Ascorbyl Palmitate: "Don't share your eos. Keep clean and dry. Adverse reactions have been reported"; (2) on the EOS retail website: "Hypoallergenic. Dermatologist tested." "Don't share your eos. Keep clean and dry. Adverse reactions have been reported. In the event of an adverse reaction, seek medical attention if necessary. All ingredients in our products are safe and approved for use by the U.S. Food and Drug Administration and the Cosmetic Ingredient Review Board. Many of these same ingredients are found in other cosmetic and food products. For further information, please contact us at info@evolutionofsmooth.com."

Dkt. 29-3 ¶ 47.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

c)      Proposed Monetary Relief in the Settlement

The Settlement Agreement also creates a payment structure with three different categories of monetary relief, but only as to certain class members. *Id.* ¶ 48. These categories are discussed below. This monetary relief is described as "a payment structure for Settlement Class Members who do not opt out and submit valid claims within sixty (60) days of the Settlement Administrator's e-mailing of the Notice of Settlement and Release of Claims and activation of the designated website hosting the same." *Id.* The timing of monetary payments will be as follows:

> Within fifteen (15) business days of receipt of a Claim with Verified Medical Expenses or a Claim for a Verified Adverse Reaction Complaint submitted within sixty (60) days of the Settlement Administrator's e-mailing of the Notice of Settlement and Release of Claims and activation of the designated website hosting the same, the Settlement Administrator will communicate to EOS's Counsel and Plaintiffs' Counsel a decision whether the claimant is entitled to the relief sought. Following the Settlement Administrator's decision that a claimant is entitled to monetary relief, within forty-five (45) business days of the Settlement Effective Date, the Settlement Administrator will send via first-class U.S. mail a check for the amount of relief due. All checks will expire 60 days after they are issued and will state this on their face.

*Id.* ¶ 52.

(1)      Tier 1 - $75 Flat Payment

The first tier of the payment structure is available to any members of the Proposed Settlement Class who incurred verifiable medical expenses from the use of EOS Lip Balm on or before the date of this preliminary approval order. *Id.* ¶ 48a. For such class members the Settlement Agreement provides for

> [a] flat payment of $75 for any medical expenses incurred on or before the date of the motion for preliminary approval of this Agreement, regardless of amount, for any Settlement Class Member who submits documented evidence from the time of the visit that (1) shows the Settlement Class Member visited a medical doctor to seek treatment for an Adverse Reaction on or before the date of the motion for preliminary approval of this Agreement; and (2) contains an indication the Adverse Reaction may have resulted from the Settlement Class Member's use of EOS lip balm. The Settlement Class Member claimant must also submit a statement, under penalty of perjury, describing the purpose of the medical visit and that at the time of the visit it related to a suspected Adverse Reaction to EOS lip balm, and a statement that the Settlement Class Member claimant believes EOS lip balm was the cause of the Adverse Reaction ("Claim with Verified Medical Expenses")[.]

*Id.* ¶ 48a.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

(2)   <u>Tier 2 - $15 Flat Payment or $20 Mail-in Rebate</u>

This monetary relief is available to any Proposed Settlement Class members who appear in EOS's database for a complaint submitted to it about an adverse reaction to EOS Lip Balm on or before the date of the order granting preliminary approval of the settlement. *Id.* ¶ 48b. According to Steven Weisbrot, a vice president of the firm selected as the Settlement Administrator, there are approximately 3500 individuals whose email addresses are listed in the database. Ex. 6 to Settlement Agreement, Declaration of Steven Weisbrot, Esq. ("Weisbrot Decl."), Dkt. 29-4 at 29 ¶ 11. As to these Proposed Settlement Class members, the Settlement Agreement provides for

> [a]n award of $15, or a mail-in rebate for $20 worth of EOS products that can be used on-line at evolutionofsmooth.com or in retail stores where EOS products are sold using the mail-in rebate, to Settlement Class Members who had a complaint appearing in EOS's complaint database on or before the date of the motion for preliminary approval of this Agreement about a claimed Adverse Reaction to EOS lip balm, without proof of any medical expenses ("Claim for a Verified Adverse Reaction Complaint")[.]

Dkt. 29-3 ¶ 48b.

(3)   <u>Tier 3 - Availability of Streamlined Arbitration</u>

The third tier of the payment structure is available to any members of the Proposed Settlement Class who claim extraordinary, verifiable medical expenses or verifiable consequential damages as a direct result of an adverse reaction to or from the use of EOS Lip Balm on or before the date of this preliminary approval order. *Id.* ¶ 48c. These Proposed Settlement Class members could elect to go to arbitration to seek a recovery not to exceed $4000. *Id.* These terms are described in the Settlement Agreement:

> For those Settlement Class Members claiming extraordinary, verifiable medical expenses and/or verifiable consequential damages as a direct result of the use of EOS lip balm occurring on or before the date of the motion for preliminary approval of this Agreement, a mechanism to invoke a streamlined arbitration option before a jointly-selected arbitrator with a capped award of $4,000 ("Request for Streamlined Arbitration"). EOS will pay the cost of the arbitration, excluding any attorneys' fees, travel costs or other incidental costs incurred by any arbitration claimant.

*Id.* ¶ 48c.

The Settlement Agreement also states the procedures for the streamlined arbitration:

> To invoke the streamlined arbitration option, a Settlement Class Member must submit a Request for Streamlined Arbitration along with an attestation, signed under penalty of perjury, regarding the claimant's medical expenses and/or consequential damages in an amount exceeding $75 incurred as a direct result of the use of EOS lip balm on or before the date

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

of the motion for preliminary approval of this Agreement. Any such request must be submitted to the Settlement Administrator within sixty (60) days of the Settlement Administrator's e-mailing of the Notice of Settlement and Release of Claims and activation of the designated website hosting the same. Within fifteen (15) business days of receipt of a Request for Streamlined Arbitration and supporting documentation, the Settlement Administrator will communicate to EOS's Counsel and Class Counsel a decision as to whether the Settlement Class Member has properly invoked the right to streamlined arbitration. Where a Settlement Class Member properly invokes this option, Class Counsel will contact the individual within fifteen (15) business days of the Settlement Effective Date. The arbitration claimant must institute arbitration proceedings within sixty (60) days of the date he or she is first contacted by Class Counsel. The maximum amount that can be awarded through arbitration is $4,000. A Settlement Class Member may not subrogate his or her arbitration claim. The arbitrator shall not consider subrogated arbitration claims. Any Settlement Class Member who submitted a Claim with Verified Medical Expenses or a Claim for a Verified Adverse Reaction Complaint is not entitled to make an arbitration claim.

*Id.* ¶ 53.

Once a class member invokes streamlined arbitration, the Settlement Agreement provides for the following procedure:

Each arbitration claim shall be conducted through written briefing before a single arbitrator mutually agreed to by both Parties, regardless of where the Settlement Class Member resides. If the Parties cannot agree to an arbitrator, the Parties will exchange a list of the names of three arbitrators, each Party will have the right to strike the name of one arbitrator from the opposing Parties' list, and the Settlement Administrator will randomly select an arbitrator from the remaining names on the Parties' lists. Once an arbitrator is selected, the Settlement Class Member will submit and serve an opening brief via email to the arbitrator and EOS, including all documentation, supporting his or her claim within fourteen (14) days after the arbitrator is selected and agrees to act as the arbitrator in this Action. EOS may submit and serve a brief in opposition within seven (7) days after the Settlement Class Member submits his or her opening brief. The Settlement Class Member may submit a reply within five (5) days after EOS submits and serves its opposition, if any. The arbitrator will issue an award within thirty (30) days after the Settlement Class Member submits and serves his or her reply brief.

*Id.*

The Settlement Agreement also limits the scope of the streamlined arbitration as well as pre-arbitration discovery:

The scope of any arbitration claim shall be limited to: (1) whether the Settlement Class Member incurred any medical expenses; (2) the amount of such expenses, if any; (3) whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC Marylou Gilsleider, et al. v. EOS Products, LLC | | |

the Settlement Class Member suffered any economic or noneconomic damages; (4) the amount of such damages, if any; and (5) whether the Settlement Class Member's use of EOS lip balm was a substantial factor in causing the damages. The term "substantial factor" means that the damages would not have occurred but for use of the EOS lip balm. Neither the arbitration claimant nor EOS may seek discovery as part of the arbitration proceedings except that the arbitration claimant must make his or her medical records and/or evidence of economic and noneconomic damages available to EOS when he or she submits and serves his or her opening brief.

*Id.*

Further, a Proposed Settlement Class member who proceeds with a streamlined arbitration may not appeal the decision of the arbitrator, and will forgo the right to arbitrate if the Proposed Settlement Class member does not comply with the required procedures. As the Settlement Agreement states:

Any Settlement Class Member who fails to submit a timely Request for Streamlined Arbitration shall be forever barred from receiving an arbitration award, but shall in all respects be bound by all of the terms of this Agreement and will be barred from bringing any action against any of the Released Parties concerning the Released Claims. EOS will pay the cost of arbitration, excluding any attorneys' fees, or other incidental costs incurred by any arbitration claimant. Class Counsel agrees to assist the Settlement Class Member in preparing the opening brief and reply brief, if necessary, free of cost. The arbitrator's decision shall be final and non-appealable as to EOS and the arbitration claimant. The arbitration claimant must institute arbitration proceedings within sixty (60) days of Class Counsel's first contact with the arbitration claimant. An arbitration claimant who does not institute arbitration proceedings within this time period shall not be able to arbitrate and will not be entitled to receive any arbitration award, but will otherwise be bound together with all Settlement Class Members by all of the terms of this Agreement and will be barred from bringing any action against any of the Released Parties concerning the Released Claims. Any arbitration claimant awarded any money through arbitration must agree to make the representations and warranties related to Medicare described in Paragraph 89, agree to release any and all claims, demands, actions, damages, debts, liabilities, fees and expenses of any nature whatsoever, and all matters of every kind, whether known or unknown, fixed or contingent, arising out of the loss of any present or future right to Medicare benefits, and agree to waive the right to sue the EOS Released Parties or their insurers under Section 1395y(b)(3)(A) of the Medicare Secondary Payer Act, related to EOS lip balm.

*Id.*

(4)     Relief Available to Other Settlement Class Members

Proposed Settlement Class members who do not qualify under any of the three categories discussed above will not receive any monetary relief pursuant to the Settlement Agreement. This is disclosed in the proposed Notice of Class Settlement: "Any Settlement Class Member who has not had an Adverse Reaction to these products can choose to do nothing. Defendant will implement changes to the disclosures on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

packaging for these products and implement disclosures on its website. You will be bound by all other terms of the Settlement including the Release." Ex. 1 to Appendix A to the Settlement Agreement, Dkt. 29-4 at 4.

        d)      Attorney's Fees and Incentive Awards

The Settlement Agreement provides for the payment by EOS of attorney's fees to Plaintiffs' counsel and for incentive awards to the named Plaintiffs. Dkt. 29-3 ¶ 49. EOS agrees to pay up to $1.85 Million in attorney's fees and incentive awards. *Id.* As the Settlement Agreement provides:

> [E]ach Named Plaintiff may apply to the Court for an award of $5,000 as consideration for her service as a Named Plaintiff and as consideration for the general release she is giving EOS under Paragraph 56 of this Agreement. EOS agrees to pay $1,850,000 to cover all attorneys' fees, litigation costs, expenses, and any enhancement payments to the Named Plaintiffs. EOS shall have no other payment obligations owed to Plaintiffs or their counsel for any amount, individually or collectively, directly or indirectly, however denominated or for whatever purpose allegedly incurred.

*Id.* ¶ 49.

        e)      Additional Terms of the Proposed Settlement Agreement

Within 60 days of receiving notice of the settlement, Proposed Settlement Class members have the right to opt out by submitting a "Request for Exclusion." *Id.* ¶¶ 60, 62. Class members who do not timely send in such a request will be bound by the Settlement Agreement. *Id.* ¶ 62.

In exchange for the aforementioned monetary and non-monetary relief provided by the Settlement Agreement, all Proposed Settlement Class members who do not opt out agree to release all of their claims that were raised or could have been raised in the complaints against EOS arising from and related to the purchase of EOS Lip Balm during the class period. *Id.* ¶ 55. This includes all claims not covered by the monetary relief and the claims of those class members who do not qualify for any of monetary relief. *Id.*

        3.      <u>Proposed Notice Plan</u>

The Settlement Agreement provides that a Settlement Administrator shall be appointed to provide notice to members of the class. *Id.* ¶ 60. Within 60 days from the preliminary approval of the settlement, the Settlement Administrator will

> (1) send via e-mail the Court-approved Notice of Settlement and Release of Claims . . . to each Settlement Class Member who appears in EOS's complaint database as having lodged a complaint relating to a purported Adverse Reaction on or before the date of the motion for preliminary approval of this Agreement and for whom an e-mail address is available through the database; and (2) post the Notice of Settlement and Release of Claims to a website created to host the notice, which will stay active until the Response

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
|  | SA CV16-00283 JAK (JEMx) |  |  |
| Title | Rachael Cronin v. EOS Products, LLC |  |  |
|  | Marylou Gilsleider, et al. v. EOS Products, LLC |  |  |

Deadline, and disseminate notices pursuant to a mutually-agreed upon notice plan to raise Settlement Class Members' awareness of the website. For those Settlement Class Members who appear in EOS's complaint database as having lodged a complaint on or before the date of the motion for preliminary approval of this Agreement, the Notice shall be sent via e-mail to each person's last known e-mail address, to the extent such e-mail address is available through the database.

*Id.*

The Settlement Agreement also provides that the "Settlement Administrator will establish and staff a toll-free telephone line at EOS's expense that Settlement Class Members can use to contact the Settlement Administrator with questions about the settlement or to change their addresses." *Id.* ¶ 61. The Settlement Administrator will also set up a website about the settlement, "where Class Members will have the ability to file a claim online, view general information about the Settlement, review relevant Court documents and view important dates and deadlines pertinent to the Settlement." Weisbrot Decl. ¶ 20. The parties have chosen Angeion Group, LLC ("Angeion") as the Settlement Administrator. Dkt. 29-1 at 14. Weisbrot, an Executive Vice President of Angeion, declares that the media notice program was designed to provide notice to 80% of the Proposed Settlement Class members, with such notice provided, on average, three times to each class member. Weisbrot Decl. ¶ 9. It "will serve approximately 21,115,000 display impressions, via the use of highly targeted internet banner ads." *Id.* He declares that the media notice program was designed based on demographic and product usage data used by advertisers to target specific groups who are likely to have used the product. *Id.* ¶¶ 12-13. This program will include targeted internet banner advertisements. *Id.* ¶¶ 16-18.

Pursuant to the California Consumers Legal Remedies Act ("CLRA"), "the notice program will utilize four 1/4 page ads in the California regional edition of *USA Today*," which will "run for four consecutive weeks." *Id.* ¶ 19. The notice program will also include direct emails to the approximately 3500 individuals with email addresses in EOS's complaint database. *Id.* ¶ 11.

**III.    Analysis**

      **A.    Conditional Class Certification**

            1.    <u>Legal Standards</u>

                  a)    Certifying Conditional Class for Purposes of Settlement

The first step in a preliminary approval process is to determine whether a class can be certified. "[T]he Ninth Circuit has taught that a district court should not avoid its responsibility to conduct a rigorous analysis because certification is conditional: Conditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule have been substantially met." *Arabian v. Sony Elecs., Inc.*, 2007 WL 627977, at *2 n.3 (S.D. Cal. Feb. 22, 2007) (quoting *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974)). "When, as here, the parties have entered into a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx)<br>SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC<br>Marylou Gilsleider, et al. v. EOS Products, LLC | | |

settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citation omitted). "Settlement is relevant to a class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). As the Supreme Court has explained:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at 620 (citation omitted). "In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) (citing *Amchem*, 521 U.S. at 620).

> b)      Class Certification in General

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks omitted). Under Fed. R. Civ. P. 23, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). That "rigorous analysis" will "frequently" include "some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

The first step in establishing the propriety of class certification requires a showing that the proposed class meets each of the prerequisites of Rule 23(a). *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350 (emphasis in original). If these four prerequisites are met, the analysis proceeds to a consideration whether the proposed class satisfies the terms of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

> 2.      Application

Plaintiffs seek conditional certification of the following Proposed Settlement Class:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

[A]ll persons residing in the United States who purchased EOS lip balm after January 1, 2009 and on or before the time of preliminary approval of the settlement by the Court, excluding EOS, EOS's officers, directors, employees, and legal representatives, EOS's subsidiaries, those who purchased the products for purpose of resale, (Ret.) Judge Peter D. Lichtman, the immediate family of Judge Lichtman, the Judges to whom these cases are assigned, the immediate family of the Judges to whom these cases are assigned, and any individuals who timely opt-out of the settlement.

Dkt. 29-3 ¶ 45.

> a)   Rule 23(a) Factors

> (1)   Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "[I]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (internal quotation marks omitted). Courts typically find this requirement to be satisfied where the proposed class contains at least 40 members. *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013) (citing cases).

The Proposed Settlement Class allegedly "includes millions of people across the country who have purchased EOS Products." Dkt. 29-1 at 30. Plaintiffs have not provided any concrete estimate of the number of people in the class. Plaintiffs have suggested, however, that the Proposed Settlement Class likely has at least 3500 members, which is the number of people that appear in EOS's complaint database. Weisbrot Decl. ¶ 11.

Based on the foregoing, the numerosity requirement is satisfied.

> (2)   Commonality

Fed. R. Civ. P. 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349-50 (internal quotation marks omitted). The class claims must "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In measuring commonality, "even a single common question will do." *Dukes*, 564 U.S. at 359 (internal quotations marks and alterations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

Plaintiffs contend that the Proposed Settlement Class shares "many important questions of fact and law raised in this litigation." Dkt. 29-1 at 31. These common questions include: "whether Defendant's labeling and marketing of the Products were misleading and/or omitted material information; whether such misrepresentations/omissions were material; whether Defendant breached warranties with the Settlement Class Members; whether Settlement Class Members suffered damages and the measure of such damages; and whether equitable relief is warranted." *Id.* The questions about whether EOS made misrepresentations and whether these misrepresentations consisted of false advertising and violated the law are common to all class members. The resolution of these questions is central to each Proposed Settlement Class members' claims.

Based on the foregoing, the commonality requirement is satisfied.

(3)    Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." This requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. Representative claims "need not be substantially identical." *Id.* Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted).

Plaintiffs contend that the named Plaintiffs are members of the Proposed Settlement Class and, like all other members of the class, purchased the EOS Lip Balm. They contend that Plaintiffs "were subject to the same misrepresentations that give rise to this litigation as the other members of the Settlement Class" and have the same legal and factual arguments. Dkt. 29-1 at 32.

Plaintiffs' claims are not typical of the claims of every member of the Proposed Settlement Class. The Proposed Settlement Class includes everyone who purchased EOS Lip Balm in the United States. This includes both those who suffered an adverse reaction and incurred resulting medical expenses, and those who did not. The Proposed Settlement Class does not seek to certify personal injury claims. Instead, it seeks certification of fraud, misrepresentation, breach of warranty and false advertising claims for all consumers who purchased the products. If a consumer paid a premium for the EOS Lip Balm believing that it had the claimed health benefits, then that person would have suffered from some financial harm assuming as true the allegations that there were no such benefits.

All of the named Plaintiffs appear to claim adverse health reactions as a result of using the EOS Lip Balm. Thus, their claims are typical of those of the Proposed Settlement Class members who suffered the same alleged harm. Their claims are not typical of the claims of the members of the Proposed Settlement Class who did not suffer adverse health reactions. These class members would have to make different arguments and marshal different evidence "to prove the defendant's liability." *Stearns*, 655 F.3d at 1019. For example, Proposed Settlement Class members who suffered an adverse health reaction could use it as evidence that the EOS Lip Balm was neither healthy nor safe, and that contrary statements by or on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

behalf of Defendant were false. Dkt. 1 ¶ 144. Proposed Settlement Class members who did not suffer an adverse health reaction would need to present evidence that that they were harmed by paying the aforementioned premium that was unwarranted.

For the foregoing reasons, the typicality requirement is not satisfied for the Proposed Settlement Class that includes all consumers, as opposed to only those consumers who suffered adverse health effects.

(4)  <u>Adequacy</u>

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In assessing the adequacy of class counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims assert in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

As noted, the proposed class representatives are Cronin, Everett, Tipirneni, Caggiano, Bevins, Menz, Ballenilla-Blondett, Santiago, Jones, Gilsleider, Ivy and Gannuccelli. Dkt. 29-1 at 7. None of them has submitted any evidence concerning his or her involvement in the various proceedings. Nor has any evidence been proffered as to the lack of any conflict between any of them and the members of the Proposed Settlement Class.[3] In their supplemental briefing, Plaintiffs provided some information about the role of the proposed class representatives in connection with the litigation. Dkt. 39. Plaintiffs argue that the representative parties are adequate representatives here because they experienced the same alleged misrepresentations and omissions as other potential Proposed Settlement Class members. Thus, Plaintiffs argue that they have no conflicts of interest. Although the evidence on this issue is quite limited, it is sufficient in connection with the present Motion as to the Proposed Settlement Class members who allegedly suffered health injuries. It is also a matter that can be subject to further review in connection with any requests for incentive awards.

For the reasons stated above, Plaintiffs are not adequate to represent the members of the Proposed Settlement Class who did not experience adverse health reactions. They may be motivated to maximize the damages for those like themselves who suffered an adverse reaction, at the expense of the claims of those Proposed Settlement Class members who only claim to have suffered a financial injury by

---

[3]  Plaintiffs have submitted "Activity Charts" that are described as summaries of the tasks and time spent on each by each of the named Plaintiffs. Exhibits B-1 - B-6 to Plaintiffs' Supplemental Submission, Dkt. 32-8 - 32-13. These charts are not signed by Plaintiffs or accompanied by any declaration that they accurately represent the amount of time each of the named Plaintiffs has spent on these matters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

purchasing the product and paying a premium for it. This conclusion is consistent with the terms of the Settlement Agreement, which only provides monetary relief for those Proposed Settlement Class members who claim to have suffered a health injury.

The proposed class counsel is the firm Geragos & Geragos, APC, which is counsel for Cronin, Everett, Tipirneni, Caggiano, Bevins. Dkt. 29-1 at 8. The following firms are counsel for the remaining named Plaintiffs: Levi & Korsinsky LLP; Bisnar Chase LLP; Wolf Haldenstein Adler Freeman & Herz LLP; Eggnatz, Lopatin & Pascucci, LLP; Imbesi Law P.C. and Napoli Shkolnik PLLC. Plaintiffs argue that Geragos & Geragos, APC has no conflicts with members or the class and is qualified to represent them based on its experience with consumer class actions and the legal matters that underlie the claims advanced in this action. Class Counsel have provided sufficient evidence to support the finding that they are adequate representatives for the class. Dkts. 29-5 throughto 29-14.

For the foregoing reasons, the adequacy of representation requirement is not satisfied by the Plaintiffs as to the Proposed Settlement Class that includes all consumers, but is satisfied by them as to the members of the Proposed Settlement Class who claim to have suffered adverse health effects. Class counsel is adequate to represent all members of the Proposed Settlement Class.

\*　　　　　\*　　　　　\*

For the foregoing reasons, the Proposed Settlement Class is overbroad. Approval of a class limited to those who suffered health injuries is appropriate on a preliminary basis.

###    B.    Preliminary Settlement Approval

####        1.    Legal Standards

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. First, in the preliminary approval process, a court must make a determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). In the second step, which occurs after preliminary approval, notification to class members, and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted by applying several criteria.

At the preliminary stage, "the settlement need only be potentially fair." *Id.* In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following eight, non-exclusive factors are among those that may be considered during both the preliminary and final approval processes:

1) the strength of the plaintiff's case;
2) the risk, expense, complexity, and likely duration of further litigation;
3) the risk of maintaining class action status throughout the trial;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx)<br>SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC<br>Marylou Gilsleider, et al. v. EOS Products, LLC | | |

4) the amount offered in settlement;
5) the extent of discovery completed and the stage of the proceedings;
6) the experience and view of counsel;
7) the presence of a governmental participant; and
8) the reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Each factor does not necessarily apply to every class action settlement. Further, where appropriate, other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (citation and internal quotation marks omitted).

Where the proposed settlement is entered before formal class certification, a "more exacting review" is required, "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation marks omitted); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."). "[T]he district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

"[S]ettlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. "One inherent risk is that class counsel may collude with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee.'" *In re Bluetooth*, 654 F.3d at 946 (quoting *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002)). "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These indicia of collusion include:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC Marylou Gilsleider, et al. v. EOS Products, LLC | | |

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (citations and internal quotation marks omitted).

> 2.   Application

>> a)   *In re Bluetooth* Signs of Collusion

>>> (1)   Whether the Proposed Award of Attorney's Fees Would be a Disproportionate Distribution of the Amounts Paid in Settlement

>>>> (a)   Overview

The Proposed Settlement releases the claims of all members of the Proposed Settlement Class, and permits three subgroups of the Proposed Settlement Class to seek monetary relief. EOS has agreed to pay all approved claims – without a cap on the total payment. Additionally, "EOS agrees to pay $1,850,000 to cover all attorneys' fees, litigation costs, expenses, and any enhancement payments to the Named Plaintiffs." Dkt. 29-3 ¶ 49.

This is as a "claims-made settlement," which "is a settlement that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling." *Newberg on Class Actions* § 13:7 (5th ed.). That there is no ceiling does not change the nature of the settlement. *See, e.g.*, *Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711-DOC-ANX, 2015 WL 4537463, at *5 (C.D. Cal. July 27, 2015), *appeal dismissed* (Jan. 13, 2016) (claims-made settlement with no fixed ceiling). "A claims-made settlement is, therefore, the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant." *Newberg* § 13:7. "A critical feature of a claims-made settlement is that although it only pays the claims of class members who file them, it releases the claims of the entire class." *Newberg* § 13:7.

> Claims-made settlements are disfavored because . . . they tend to promise far more than they deliver. In most class action settlements (claims made or not), claiming may be quite low because of the small claims nature of the relief and the often difficult hurdles of claiming; if the defendant is disgorged of only the amounts claimed, and not of a fixed fund, it is likely to pay only a small percentage of the potential total recovery to the class. This troubles courts, even more so if the settlement also includes a "clear sailing" agreement whereby the defendant agrees not to contest class counsel's fee request up to a certain level. The combination makes it appear as if class counsel agreed to a low defendant liability in exchange for an easy fee.

*Newberg* § 13:7 (footnotes omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) <br> SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC <br> Marylou Gilsleider, et al. v. EOS Products, LLC | | |

The nature of the claims-made settlement in this action and the lack of any estimate of what monetary liability Defendant may have, raises substantial issues as to the proposed payment of attorney's fees. Thus, this amount may be disproportionate to the financial recovery by members of the Proposed Settlement Class.

(b)    The Amount of Settlement

(i)    Value of Monetary Relief

Plaintiffs have given no estimate of the total value of the claims being settled or the amount Defendant expects to pay to members of the Proposed Settlement Class who allege health injuries. There is no statement as to what percentage of the Proposed Settlement Class who qualifies for financial relief will bring claims. Nor is there any estimate as to how the members of the Proposed Settlement Class that allegedly suffered such injuries are allocated among the three categories for recovery described earlier. Instead, Plaintiffs assert that "the three-tiered cash structure provides meaningful monetary relief to an unlimited number of Settlement Class Members who qualify for each tier." Dkt. 29-1 at 24. They also argue that "if a Settlement Class Member chooses to do so, he or she could obtain up to $4,000." *Id.* However, the Settlement Agreement explicitly provides that relief beyond $75 is available only "[f]or those Settlement Class Members claiming extraordinary, verifiable medical expenses and/or verifiable consequential damages as a direct result of the use of EOS lip balm." Dkt. 29-3 ¶ 48c. Further, this relief can only be obtained if the Proposed Settlement Class member elects to arbitrate his or her claim. *Id.* One premise of a class action is that absent certification, a large percentage of members of the class will not seek individual relief because it is onerous and time-consuming. Further, no more than $4000 can be recovered even if medical expenses alone exceeded that figure. *Id.* In light of these factors, there is no assurance that arbitration will be pursued by those who are eligible. In the supplemental briefing, the parties suggest that they have not received any evidence that any member of the Proposed Settlement Class will claim financial loss or harm of more than $4000. Dkt. 39 at 3. They also argue that a Proposed Settlement Class member is free to opt out and pursue an individual claim.

Plaintiffs also argue, without providing supporting evidence, that the settlement potentially "includes millions of people across the country who have purchased EOS Products." Dkt. 29-1 at 30. However, only class members who have suffered an adverse reaction can obtain any monetary relief. *See* Dkt. 29-3 ¶ 48. There is no evidence about how many purchasers suffered adverse reactions, or what percentage of the "millions" of purchasers sustained such harm.

The only evidence on this general topic is the declaration of Weisbrot. He declares that EOS has indicated that there are approximately 3500 consumers identified in EOS's complaint database. Weisbrot Decl. ¶ 11. However, there is no explanation about the criteria for placing someone into the EOS complaint database. Assuming that each of the 3500 individuals successfully pursued arbitration and was awarded $4000, the total recovery would be $14 Million. However, if each qualified for either the $75 payment or the $15 payment, the respective total recoveries would be $262,500 or $52,500. Further, these are the only individuals who will receive direct notice of the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|          | SA CV16-00283 JAK (JEMx) |      |               |
| Title    | Rachael Cronin v. EOS Products, LLC | | |
|          | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

Any other individuals not in the EOS complaint database who have suffered an Adverse Reaction and have the required documentation will receive notice through the publication campaign, which the parties contend will reach 80% of the Proposed Settlement Class. Dkt. 29-1 at 16.[4]

Because this is a claims-made settlement, without more evidence of the potential number of the members of the Proposed Settlement Class who are actually eligible to claim a payment, a reasonable estimate cannot be made of the total amount of monetary relief that will result from the Settlement Agreement.

(ii)     Value of Injunctive Relief

Plaintiffs also argue that the non-monetary, injunctive relief is meaningful. Dkt. 29-1 at 9, 24. However, Plaintiffs do not provide any estimate of the equivalent monetary value of this relief. In response to the request that Plaintiffs provide "greater details as to the estimated dollar value of the proposed injunctive relief," Plaintiffs acknowledged that the monetary value would be difficult to estimate. Dkt. 39 at 6. However, they argue that the potential monetary value would be substantial because the injunctive relief will be effective in "preventing potentially thousands of claimed injuries from occurring in the future." *Id.* Plaintiffs also contend that the value of the proposed injunctive relief can be calculated by the costs it would impose on Defendant. Plaintiffs contend that these costs could include "formula changes [that] would require research and development and product testing expense. These costs would be substantial, potentially tens of thousands of dollars or more." *Id.* at 7. However, the proposed injunctive relief does not appear to require Defendant to make any changes to its formula. The proposed injunctive relief only applies to disclosures Defendant agrees to include on its labeling and website. Dkt. 29-3 ¶ 47. The only reference to formula changes in the proposed injunctive relief is that Defendant would not be required to make the disclosures on products for which the formula was changed after January 22, 2016. *Id.*

Plaintiffs also state that the non-monetary relief consists of "additional disclosures by EOS on certain of the Products and its website stating, among other things, that 'Adverse reactions have been reported' and EOS Products should not be shared." Dkt. 29-1 at 9. They state that this is valuable because "Plaintiffs' Counsel believe that such disclosures are valuable to warn consumers of the potential for adverse reactions from using the Products – the central issue in this litigation." *Id.*; *see also id.* at 24 ("Such adverse reactions are the centerpiece of this litigation. Accordingly, the non-monetary relief is also meaningful."). There is no concrete evidence about the value of this relief. If it prevents future harm to consumers, calculating the value of that savings presents the same issues discussed above about valuing the harm to members of the class. *See also Acosta*, 243 F.R.D. at 395 ("The ability of the Settlement's injunctive relief to redeem an unsatisfactory settlement is even further crippled by the possibility that these changes to Trans Union and Equifax's reporting procedures are inevitable. To the extent Trans Union and Equifax's reporting procedures may actually violate the FCRA, these injunctive relief provisions are of no value."); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D. Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit."); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 785 (7th Cir. 2014) (Posner, J.) ("A larger objection to the

---

[4]  Plaintiffs have provided no evidence to support this 80% estimate. It is unclear how this estimate has been made when Plaintiffs state that they cannot presently estimate the number of class members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

injunction is that it's superfluous—or even adverse to consumers. Given the emphasis that class counsel place on the fraudulent character of [the defendant]'s claims, [the defendant] might have an incentive even without an injunction to change them.").[5]

It is also noteworthy that "[a] number of commentators have identified settlements that afford only nonpecuniary relief to the class as prime suspects of [collusive] settlements." *Acosta*, 243 F.R.D. at 395 (quoting *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 802 (3d Cir. 1995)). "For this reason, a primarily non-cash settlement, such as this one, merits particularly close scrutiny to determine whether it represents a verifiably fair and adequate settlement of plaintiffs' claims against the [defendants]." *Id.* (citation and internal quotation marks omitted). Therefore, the presence of injunctive, non-monetary relief does not add to the calculus in weighing the monetary value of the settlement. *See Staton*, 327 F.3d at 974 ("only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees.").

For these reasons, the value of the proposed injunctive relief cannot be meaningfully evaluated. *Cf. Allen*, 787 F.3d at 1225 ("The district court noted the existence of this injunctive relief, but did not make express findings about the value of the injunctive relief, findings that might have given more justification for the reasonableness of class counsel's fee award." (citation omitted)).

(c)     The Amount of Attorney's Fees

(i)     Legal Standards

Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement"; however, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941; *see also* Fed. R. Civ. P. 23(h). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965. Factors considered in examining the reasonableness of the fee include: (1) whether the results achieved were exceptional; (2) risks of litigation; (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the contingent nature of the fee and financial burden carried by counsel; and (6) the lawyers'

---

[5] It is also unclear whether the primary value of this non-monetary relief would be to consumers or EOS. It may be of significant value to EOS, which could be insulated from future liability by correcting the allegedly unlawful misrepresentations that led to this present action. *See Pearson*, 772 F.3d at 785 ("The injunction actually gives [defendant] protection by allowing it, with a judicial imprimatur (because it's part of a settlement approved by the district court), to preserve the substance of the claims by making—as we're about to see—purely cosmetic changes in wording, which [defendant] in effect is seeking judicial approval of.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

"reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

In common fund cases, a district court has discretion "to choose either the percentage-of-the-fund or the lodestar method" to calculate attorney's fees. *Id.* at 1047. "The lodestar determination has emerged as the predominate element of the analysis in determining a reasonable attorney's fee award." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997) (internal quotation marks and citation omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. In determining the number of hours reasonably expended on the litigation, those that are "excessive, redundant, or otherwise unnecessary" should be excluded. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). To determine the reasonableness of an attorney's hourly rate, it is appropriate to consider evidence as to the billing rates charged by other counsel for similar work in the relevant community. *Id.* "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* at 945-46.

Although the lodestar amount is presumptively reasonable, "the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.* at 942; *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir.2009) (ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"). "[W]here the plaintiff has achieved 'only limited success,' counting *all* hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'" *In re Bluetooth*, 654 F.3d at 942 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 440 (1983). "While the lodestar method of awarding fees is permissible under CAFA, the Court has the discretion to use either a percentage or lodestar method in awarding fees, and is particularly wary of using the lodestar method . . . where, as here, the benefit achieved for the class is small and the lodestar award large." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (2015).

When the percentage-of-fund method is chosen, 25% is the "benchmark." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Any amount between 20-30% is the "usual range." *Vizcaino*, 290 F.3d at 1047. That amount may be "adjusted upward or downward to account for any unusual circumstances involved in [the] case." *Paul*, 886 F.2d at 272. Although 25% is the "starting point," selection of the benchmark or any other rate "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. Even if a court elects to employ a percentage-of-fund method, a district court may "cross-check" this amount by calculating the lodestar. *Id.* at 1050. "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) <br> SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC <br> Marylou Gilsleider, et al. v. EOS Products, LLC | | |

(ii)   <u>Application</u>

Plaintiffs argue that an award of $1.8 million in attorney's fees and costs is reasonable because it is "to be paid entirely by EOS separate and apart from the payments it makes to Settlement Class Members." Dkt. 29-1 at 27. However, "[t]hat the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Staton*, 327 F.3d at 964. "Even when technically funded separately, the class recovery and the agreement on attorneys' fees should be viewed as a 'package deal.'" *In re Bluetooth*, 654 F.3d at 948-49. This is because "[o]rdinarily, 'a defendant is interested only in disposing of the total claim asserted against it'" and "'the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.'" *Staton*, 327 F.3d at 964 (quoting *In re GMC.*, 55 F.3d at 819-20); *see also Pearson*, 772 F.3d at 783 ("[The defendant] has no reason to care about the allocation of its cost of settlement between class counsel and class members; all it cares about as a rational maximizer of its net worth is the bottom line—how much the settlement is likely to cost it."). A court "therefore must ensure that both the amount and mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from a common fund or are otherwise paid." *In re Bluetooth*, 654 F.3d at 949 (citation omitted).

Plaintiffs next contend that the award of $1.8 million is reasonable based on a lodestar analysis. Thus, they argue that "Class Counsel collectively expended hundreds of hours litigating the Action, with a total current lodestar of more than $1.8 million (which will increase with the filing of the final approval papers, final approval hearing, and any appeals), with no certainty of any payment at all." Dkt. 29-1 at 28. Plaintiffs have provided certain fee summaries in support of this claim, but not a precise lodestar calculation. Dkt. 32. Plaintiffs add that the $1.8 million is not disproportionate to the financial recovery to Proposed Settlement Class members because "[m]illions of people purchased this product during the Settlement Class Period and there is no cap on the number of people who can claim any of the three tiers of cash awards." Dkt. 29-1 at 27. However, the financial recovery issue was addressed above. There is no assurance that all of the purchasers will receive a financial recovery. That relief is limited to those who can show a health injury. No evidence has been provided as to what percentage of Proposed Settlement Class members will qualify or those who will, the percentage that will pursue claims. For these reasons, there is no reliable basis on which the proportionality between the payment to the Proposed Settlement Class and the attorney's fees can be assessed.

As also discussed above, it is reasonably likely that the total payment to members of the Proposed Settlement Class will be less than $1.8 Million. As noted, if each of the 3500 individuals in the EOS complaint database successfully pursued arbitration and was awarded $4000, the total recovery would be $14 Million. However, if each only qualified for either the $75 payment or the $15 payment, the respective total recoveries would be $262,500 or $52,500. No evidence has been presented as to a reasonable claims rate among members of the Proposed Settlement Class or the amount each would recover. Given this uncertainty, a comparison of the proposed fee amount to the potential recovery amount is not feasible. Therefore, it cannot be shown that it is appropriate on this ground. *See, e.g., Acosta*, 243 F.R.D. at 393-94 ($5,485,000 attorney's fee request was "so grossly out of proportion to the class members' probable aggregate recovery [of less than $1,000,000] as to suggest a strong possibility of impropriety"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011) (the court was concerned by "an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

unopposed award roughly four times greater than the actual and expected payout to the class . . . . [T]he imbalance between the fee award and the class recovery is troubling in this case because: (1) as in *Bluetooth*, there is a clear sailing agreement and fees not awarded revert back to [the defendant], and (2) there are substantial questions as to the adequacy of the class benefits given the imposition of a claims process (where there is no clear need for one) and reversion of unclaimed funds to [the defendant].").

That Plaintiffs' Counsel assumed the risk of performing a substantial amount of services without any certainty of receiving compensation does not justify an otherwise unreasonable award of attorney's fees. "[A]ttorneys' fees don't ride an escalator called risk into the financial stratosphere." *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) (Posner, J.), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015). This is illustrated by the following hypothetical that is stated in that opinion:

> [T]he reasonableness of a fee cannot be assessed in isolation from what it buys. Suppose class counsel had worked diligently—as hard and efficiently as they say they worked—but only a thousand claims had been filed in response to notice of the proposed settlement, so that the total value of the class, even treating a $10 coupon as the equivalent of a $10 bill, was only $10,000. No one would think a $1 million attorneys' fee appropriate compensation for obtaining $10,000 for the clients, even though a poor response to notice is one of the risks involved in a class action.

*Id.*

As presently formulated, the Settlement Agreement awards what may be a disproportionate amount of the overall recovery as attorney's fees. Thus, the first sign of collusion under *In re Bluetooth* is presented. Because of the claims-made settlement structure, class members may receive little, if anything, from Defendant, yet Class Counsel would receive a substantial fee award. Its amount is not affected by the number of claims filed or the actual payments by Defendant on those claims. *See True*, 749 F. Supp. 2d at 1078 ("Under the terms of the settlement, there is no certainty that class members will receive any cash payments or rebates at all, but class counsel will receive a three million dollar payment regardless of whether one or 10,000 class members file valid claims. Since there is no guarantee that AHM will pay any money out of the settlement to either class members or a cypress beneficiary, to award three million dollars to class counsel who may have achieved no financial recovery for the class would be unconscionable."); *cf. Pearson*, 772 F.3d at 783 ("When the parties to a class action expect that the reasonableness of the attorneys' fees allowed to class counsel will be judged against the potential rather than actual or at least reasonably foreseeable benefits to the class, class counsel lack any incentive to push back against the defendant's creating a burdensome claims process in order to minimize the number of claims.").

As another court in this district has observed:

> Under *Bluetooth*, one sign of unfairness is a disproportionate fee award compared to the class recovery. Even in the absence of collusion (the Court finds no collusion here), there is a possibility that a conflict of interest influenced the settlement. Even in hard-fought cases as here, there exists a danger that class counsel may, even if only unconsciously,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx)<br>SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC<br>Marylou Gilsleider, et al. v. EOS Products, LLC | | |

strike a bargain which benefits counsel at the expense of the class. Furthermore, where the defendant is willing to accede to a fee request that is substantially disproportionate to class recovery, there exists a distinct possibility that a balance more favorable to the class could have been struck without additional expense to the defendant.

*Vector Mktg.*, 2011 WL 4831157, at *4.

(2)    Clear Sailing Arrangement

"'Clear sailing agreements' are agreements whereby the defendant agrees not to contest class counsel's fee petition as long as it does not exceed a specified amount." *Newberg* § 13:9; *see also In re Bluetooth*, 654 F.3d at 940 n.6 ("These negotiated attorneys' fee and incentive awards were provided under what is known as a 'clear sailing agreement,' wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value.").

> These agreements are troubling because they demonstrate that class counsel negotiated some aspect of their fee arrangement with the defendant, when counsel's ethical obligation is to the class, not to its own fees. Courts worry that such agreements are indicia of collusion between class counsel and the defendant, signaling that perhaps class counsel agreed to a smaller class recovery in exchange for a heftier fee.

*Newberg* § 13:9 (footnotes omitted); *see also In re Bluetooth*, 654 F.3d at 949 ("Although clear sailing provisions are not prohibited, they 'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991))).

Fee requests covered by clear sailing arrangements are subject to greater scrutiny. *See In re Bluetooth*, 654 F.3d at 949 ("Given the questionable features of the fee provision here, the court was required to examine the negotiation process with even greater scrutiny than is ordinarily demanded, and approval of the settlement had to be supported by a clear explanation of why the disproportionate fee is justified and does not betray the class's interests."). Clear sailing arrangements "may be less likely to be approved in claims made settlements and in settlements where unpaid fees or claims will revert to the defendant." *Newberg* § 13:9.

Here, "EOS agrees to pay $1,850,000 to cover all attorneys' fees, litigation costs, expenses, and any enhancement payments to the Named Plaintiffs." Dkt. 29-3 ¶ 49. This is a clear sailing agreement. This is another sign of collusion recognized by *In re Bluetooth*. Therefore, the reviewing court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding unreasonably high fees simply because they are uncontested." *In re Bluetooth*, 654 F.3d at 948 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| --- | --- | --- | --- |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

(3)    The Claims-Made Settlement is the Functional Equivalent of a
Common Fund Settlement with a Reversion of Funds to Defendant

The Settlement Agreement does not include a "kicker" that states that all unclaimed funds revert to the Defendant. There is no set amount of total recovery. However, "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant." *Newberg* § 13:7. EOS will only make payments to those Proposed Settlement Class members who file claims and succeed on them. EOS will not make any other payments irrespective of the number of claims filed. Therefore, a form of this element of collusion identified *In re Bluetooth* is present. *See also Vector Mktg.*, 2011 WL 4831157, at *7 (a "settlement agreement did contain in essence a reverter provision comparable to that identified as problematic by the Ninth Circuit in *Bluetooth*" when the settlement agreement provided that unclaimed funds would revert to defendant and "it was obvious to the parties that the fund would not be exhausted and that [defendant] would benefit from the reversion"). This is problematic because

> a kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger of collusion already suggested by a clear sailing provision. If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package, but the full fee award would be unreasonable, there is no apparent reason the class should not benefit from the excess allotted for fees. The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees.

*In re Bluetooth*, 654 F.3d at 949.

\*          \*          \*

The existence of these signs of collusion "does not mean the settlement cannot still be fair, reasonable, or adequate." *Allen*, 787 F.3d at 1224. However, the Court has "a special obligat[ion] to assure itself" that the settlement is fair, reasonable, and adequate and "that the fees awarded in the agreement [are] not unreasonably high." *Id.* (internal quotation marks omitted) (first alteration in original). In light of the deficiencies in the proposed settlement, noted above, the Court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high,' for if they were, 'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'" *In re Bluetooth*, 654 F.3d at 947 (quoting *Staton*, 327 F.3d at 964-65).

b)    Strength of Plaintiffs' Case, Risk, Expense and Complexity of Litigation and
Risk of Maintaining Class Action Status

Although in assessing proposed class action settlements a court is to consider the strengths of a plaintiff's case and the risks of continued litigation, the court is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|----------|--------------------------|------|---------------|
|          | SA CV16-00283 JAK (JEMx) |      |               |
| Title    | Rachael Cronin v. EOS Products, LLC | | |
|          | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

settlements." O*fficers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.*

It is difficult to evaluate the strength of Plaintiffs' case in this action because there has been limited litigation of the merits. Plaintiffs have not directly addressed the strength of their claims. Plaintiffs argue that, as in any litigation, there is a risk that they would not prevail:

> While Plaintiffs believe their case has merit, numerous obstacles exist that could prevent them from prevailing at trial and on appeal. For example, there is no certainty the Court would require Defendant to return all the money paid for EOS lip balms to Plaintiffs or the proposed class members. In addition, appeals are expensive, inherently risky, and cause inevitable delay.

Dkt. 29-1 at 24-25.

The Complaint presents facially viable claims for violations of the CLRA, and UCL and common law claims for breach of warranty, unjust enrichment and fraud. Consumers have prevailed in similar class actions in which they have advanced misrepresentation claims pursuant to the CLRA and UCL. *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010).

Viewed collectively, the foregoing factors as to the risks and expenses of having this litigation proceed, favor the preliminary approval of the settlement.

c)      Amount Offered in Settlement

As noted, the Settlement Agreement provides for a three-tiered structure of monetary relief as well as certain non-monetary remedies. Plaintiffs have provided no evidence to support an estimate of the amount that may be paid, or the expected range within that amount is likely to fall. For the reasons stated above, that the Proposed Settlement Class includes millions of purchasers is not meaningful. What matters is how many members suffered a health injury that can be established. *See True*, 749 F. Supp. 2d at 1078 (denying approval where "[u]nder the terms of the settlement, there is no certainty that class members will receive any cash payments or rebates at all, but class counsel will receive a three million dollar payment regardless of whether one or 10,000 class members file valid claims.").

(1)      Amount Offered in the $15 and $75 Settlement Payment Tiers

Plaintiffs claim that "even the smallest recovery here – either $15 in cash or a $20 rebate on any EOS products – is significant given that the average retail price of EOS lip balm is approximately $3.99. Thus, whether a Settlement Class Member purchased one or many of the Products, the monetary award is meaningful." Dkt. 29-1 at 24. As noted above, however, even the smallest relief is only available to purchasers who suffered an adverse reaction and have presented a complaint listed in EOS's complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) <br> SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC <br> Marylou Gilsleider, et al. v. EOS Products, LLC | | |

database. Even if those criteria are met, $15 may not provide meaningful relief to those who suffered an injury and incurred expenses whose combined cost exceeds $15. Plaintiffs reiterate that monetary relief is available to "an unlimited number of Settlement Class Members who qualify for each tier." *Id.* As noted, however, with respect to the $15 claim, it is only available to the approximately 3500 individuals -- those purchasers whose names appear in EOS's complaint database. Weisbrot Decl. ¶ 11.

The $75 tier is limited by the number of people who suffered an adverse reaction and have the required documentation of the resulting medical expenses they incurred. As noted, there is no evidence about the number of potential claimants who are within this category. As a result, there is no showing that the number would exceed the 3500 members of the Proposed Settlement Class that have complained to Defendant. It is also of concern that only a select sub-group of the Proposed Settlement Class will obtain any monetary relief, notwithstanding that others may have incurred financial harm, for which the corresponding claims will be released. *See True*, 749 F. Supp. 2d at 1066-67 ("the proposed settlement's award of a cash payment—'Option C'—to only a select sub-group of the class creates the most significant obstacle to approval of this settlement."). There is also no explanation of how the amount available to Proposed Settlement Class members within each tier were established.

(2)  Amount Offered in the Arbitration Settlement Payment Tier

Plaintiffs contend that the settlement provides meaningful monetary relief because "if a Settlement Class Member chooses to do so, he or she could obtain up to $4,000." Dkt. 29-1 at 24.[6] However, such awards are available only to those Proposed Settlement Class members "claiming extraordinary, verifiable medical expenses and/or verifiable consequential damages as a direct result of the use of EOS lip balm occurring on or before the date of the motion for preliminary approval of this Agreement." Dkt. 29-3 ¶ 48c. These Proposed Settlement Class members "must submit a Request for Streamlined Arbitration along with an attestation, signed under penalty of perjury, regarding the claimant's medical expenses and/or consequential damages in an amount exceeding $75 incurred as a direct result of the use of EOS lip balm on or before the date of the motion for preliminary approval of this Agreement." *Id.* ¶ 53. Once again, there is no estimate of the number of Proposed Settlement Class members who would seek to qualify for such relief or the likely amount or range of resulting awards. Nor is there a sufficient explanation as to how this cap amount was set, given that recovery is limited to provable damages.

Plaintiffs contend that an arbitration is preferable to a court proceeding because the process will be less costly to both sides. Plaintiffs argue that Proposed Settlement Class members would be hindered by court proceedings because "a class member would at minimum be required to appear for hearing and would be subject to questioning by the presiding court." Dkt. 39 at 3. Even if this position were given substantial weight, it is significant that the proposed arbitration process is limited. There is no formal discovery process,

---

[6] To the extent that most of the members of the Proposed Settlement Class were to elect to pursue this relief, an issue would be presented under Fed. R. Civ. P. 23(b)(3). If the principal means of recovery for the Proposed Settlement Class is through arbitration at which individual issues would be addressed, a question would be presented as to whether the unique issues as to physical injuries, medical expenses and consequential damages that each Proposed Settlement Class member suffered would predominate over any common questions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

but the claimant must disclose his or her medical records as well as documented evidence of damages as part of his or her opening brief. Claimants must also prove "but for" causation in order to obtain a recovery of damages, but are not entitled to receive any documents from Defendant that could bear on this issue.

Plaintiffs argue that discovery would not be necessary because information about EOS's products and ingredient lists are available publically. However, Plaintiffs also observe that claimants can submit independent laboratory analysis or retain their own experts to establish causation. There is an apparent imbalance in this process.

Class counsel have agreed to assist Proposed Settlement Class members who proceed in arbitration in in the preparation of the opening and reply briefs in the process. There is no showing, however, that there would be assistance in engaging experts or conducting testing. There is also no showing that the costs of doing so would make sense when the maximum available recovery is $4000. Further, the claimant would have to pay for "any attorneys' fees, travel costs or other incidental costs incurred by any arbitration claimant." Dkt. 29-3 ¶ 48c.

Although the arbitration may lead to a prompt disposition, there is no showing that it would be more efficient that an action brought in a small claims court. In California, the $10,000 jurisdictional limit of a small claims action is more than twice the proposed $4000 arbitration cap. Cal. Code Civ. Proc. § 116.221.

For these reasons, Plaintiffs have not adequately demonstrated that Proposed Settlement Class members whose claims are eligible for arbitration would benefit from releasing their right to bring an individual civil action, including one in a small claims court. Plaintiffs have not met their burden to establish that the arbitration process provided for in the Settlement Agreement affords a fair, reasonable and adequate settlement.

(3)   <u>Other Courts Have Denied Approval to Similar Settlements</u>

Other district courts in California have denied approval to similar claims-made settlements. *Acosta* denied preliminary approval to a claims-made settlement, finding that it was not fair, adequate or reasonable because it required class members to opt out to preserve their claims, but to opt in to collect a payment. 243 F.R.D. at 394. Further, in a claims-made settlement there is no settlement fund and the payout depends on the number of class members who file claims. *Id. Acosta* found that this was particularly troubling when the majority of class members did not receive direct notice, which is also proposed here. *Id.* As *Acosta* explained:

> By this mechanism, Trans Union and Equifax reap the best of both worlds: class members wishing to preserve any valid claims against them must affirmatively opt out, while class members wishing to forego those claims and recover whatever monetary relief the Settlement allows must affirmatively opt in via the mandatory Claims Made process. Given the absence of direct notice to the majority of class members and the previously mentioned likelihood that many class members, through no fault of their own, will be unaware of valid claims against Defendants, there are likely to be a considerable number of such individuals who fail to act for reasons wholly unrelated to apathy or a conscious choice to abstain. For

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx)<br>SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC<br>Marylou Gilsleider, et al. v. EOS Products, LLC | | |

these individuals, the Settlement presents an unforgiving whipsaw, releasing Trans Union and Equifax from all conceivable claims while granting nothing of monetary value in return.

*Id.*

*Vector Mktg.* reached a similar result. 2011 WL 4831157, at *7. It denied final approval to a claims-made settlement when it became clear that the parties' estimates of the amount of settlement were far higher than the actual payout to the class with the balance reverting to the defendant. *Id.* at *5. *Vector Mktg.* observed:

> Rather, the Court's concern is that the $13 million figure is largely illusory and was substantially undercut by other provisions in the parties' settlement agreement—in particular, as discussed in the order granting preliminary approval, the provision requiring a claims process for the training time claim and the provision that all unclaimed funds revert back to Vector. Taken together, these provisions all but guaranteed that Vector would pay out substantially less than $13 million to the class. And in fact, as noted above, the actual payout to the class is less than $1 million, only 12.88 percent of the $7.76 million settlement fund and 6.56 percent of the maximum verdict value.

*Id.* (citations omitted).

Similar to the agreements in *Acosta* and *Vector Mktg.*, the Settlement Agreement here permits EOS to "reap the best of both worlds." *Acosta*, 243 F.R.D. at 394. Unless a Proposed Settlement Class member affirmatively opts out, EOS will obtain a release of his or her claims. However, the process for those Proposed Settlement Class members who do assert claims, is deficient. There is also no evidence as to the percentage of Proposed Settlement Class members who will elect to assert claims. Because there is no class fund, the smaller the number of Proposed Settlement Class members that bring claims, the smaller the payment EOS will make to the Proposed Settlement Class.

For the foregoing reasons, this factor provides substantial weight against preliminary approval of the settlement.

d)    Extent of Discovery Completed and the Stage of the Proceedings

"The extent of the discovery conducted to date and the stage of the litigation are both indicators of Lead Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 *Moore's Federal Practice*, § 23.85[2][e] (Matthew Bender 3d ed.)).

Plaintiffs do not directly address the stage of the proceedings or the extent of discovery completed. The *Cronin* action was filed on January 12, 2016. Dkt. 1. Settlement discussions began the next day. Meiselas Decl., Dkt. 29-9 ¶ 4. Less than a week later, on January 17, 2016, the parties selected a mediator. *Id.* ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx)<br>SA CV16-00283 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| Title | Rachael Cronin v. EOS Products, LLC<br>Marylou Gilsleider, et al. v. EOS Products, LLC | | |

They attended mediation on January 22, 2016. *Id.* ¶ 8. The parties did not reach a resolution at that time. *Id.* The following week, on January 28, 2016, before the *Gilsleider* Action commenced, counsel for Cronin and EOS announced a proposed settlement agreement of that action and the four others brought by counsel for Cronin. Dkt. 11-1 at 5-6. By March 10, 2016, the *Cronin* parties and EOS had reached a consolidated nationwide settlement. Meiselas Decl., Dkt. 29-9 ¶ 9. The *Gilsledier* Action was then filed, and on April 15, 2016, the *Gilsleider* Plaintiffs filed a motion to consolidate it with the *Cronin* Action. Dkt. 11. This was the only motion filed in these cases, prior to the present one. Negotiations among counsel for all of the actions continued for about six months until the proposed settlement was finalized in October 2016.

"Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement." *Acosta*, 243 F.R.D. at 397. This settlement was reached before discovery had occurred, and prior the filing of a motion for class certification. Therefore, there is no showing that the parties reached the settlement "based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice*, § 23.85[2][e]).

For these reasons, these factors weigh against the preliminary approval of the settlement.

e)      Arms-Length Negotiations

Plaintiffs argue that this factor favors settlement because "[t]he Settlement is the product of arm's-length, hard-fought, non-collusive negotiations." Dkt. 29-1 at 23. The settlement was originally reached after the parties attended mediation with Judge Lichtman on January 22, 2016, and then conducted further negotiations, in which he apparently played some role. Meiselas Dec., Dkt. 29-9 ¶¶ 6-9. The parties have not provided a declaration of Judge Lichtman, and the scope of his involvement in the settlement process is unclear. Further, the settlement negotiations appear to have proceeded for months after the *Gilsleider* Plaintiffs became involved in the litigation. The parties have not stated whether Judge Lichtman was involved in these further negotiations or in finalizing the Settlement Agreement.

Negotiations like those that occurred here may support a finding of fairness of the proposed settlement. *See Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *5 (N.D. Cal. Aug. 29, 2014) (approval of settlement supported where "sufficient amount of discovery was completed," and three full-day mediation sessions were conducted); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *3 (C.D. Cal. July 27, 2010); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007). The use of an experienced mediator is accorded significant weight in determining fairness. *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). However, "the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *In re Bluetooth*, 654 F.3d at 948. This is because "the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

Plaintiffs further contend that the settlement was the result of arms-length negotiations because attorney's fees were not negotiated until after the terms of the Settlement Agreement were finalized. However, "the mere assertion that the class claims were first settled before any fee provision was negotiated does not insulate from review a significant disproportion between the class recovery and fee award." *Vector Mktg.*, 2011 WL 4831157, at *4. As the Ninth Circuit has observed in a similar setting, "the district court should . . . press[] the parties to substantiate their bald assertions with corroborating evidence." *In re Bluetooth*, 654 F.3d at 948. Judge Posner has also provided insights into this issue:

> Class counsel claim that often they negotiate for the benefits to the members of the class first, selflessly leaving for later any consideration of or negotiation for their award of attorneys' fees. That claim is not realistic. For we know that an economically rational defendant will be indifferent to the allocation of dollars between class members and class counsel. Caring only about his total liability, the defendant will not agree to class benefits so generous that when added to a reasonable attorneys' fee award for class counsel they will render the total cost of settlement unacceptable to the defendant. We invited class counsel to explain how, therefore, negotiating first for class benefits could actually benefit a class, and were left without an answer.

*Pearson*, 772 F.3d at 786.

For the foregoing reasons, this factor is neutral.

f)      Experience and Views of Counsel

Class Counsel state that they are experienced litigators, with substantial expertise in class actions and complex litigation. Dkt. 29-1 at 23. *See* Dkts. 29-5 to 29-14. "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D. N.Y. 1997)); *accord In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) (opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement"). However, due to the large award of attorney's fees, counsel has a vested, personal interest in the approval of this settlement. *See Tait*, 2015 WL 4537463, at *8 ("In light of the problematic incentives inherent in agreements like the one before the Court, however, the views of counsel are not given significant weight.").

The weight given to the views of Class Counsel may be accorded less weight when the factors identified by *In re Bluetooth* are present. *In re Bluetooth*, 654 F.3d at 948. Further, because the settlement negotiations began and ended before discovery or any litigation on the merits in these actions, the views of Class Counsel warrant more limited weight. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528. However, their substantial experience in class action proceedings, including the negotiation of settlements, provides a substantial offsetting consideration.

For the foregoing reasons, this factor is neutral.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

\*                    \*                    \*

A consideration of all of the foregoing factors shows that the Settlement Agreement is not reasonable, fair or adequate.

       **C.**    **Deficiencies in the Notice Plan**

         1.    <u>Legal Standard</u>

For a class certified under Fed. R. Civ. P. 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Where a class is certified under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B) . . . [and] both the content of the notice and the form of the notice must be adequate and approved by the Court." *Monterrubio v. Best Buy* Stores, L.P., 291 F.R.D. 443, 452 (E.D. Cal. 2013).

Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

         2.    <u>The Notice Plan</u>

Plaintiffs argue that the proposed notice plan meets the requirements of Rule 23. The notice plan includes direct notice through emails to the persons whose email addresses are in the EOS complaint database. Weisbrot Decl. ¶ 11. As noted, there are approximately 3500 of them. These are the only Proposed Settlement class members who will receive direct notice.

The notice plan also includes internet banner advertisements. *Id.* ¶ 9. These advertisements will be targeted at individuals who "have recently browsed content in categories such as Beauty, Health Products, Makeup and EOS Items." *Id.* ¶ 17. The Settlement Administrator has determined such persons are those "most likely to be members of the class." *Id.* The internet media campaign will run for four weeks. *Id.* ¶ 18. Weisbrot, a vice president of the firm chosen as the Settlement Administrator, declares that this campaign is designed to deliver notice, on average, three times to 80% of the class. *Id.* ¶ 9. He declares that the plan "will serve approximately 21,115,000 display impressions, via the use of highly targeted internet banner ads." *Id.* He declares that the media notice program was designed based on demographic and product usage data used by advertisers to target specific groups. *Id.* ¶¶ 12-13.

In addition, "to satisfy the notice requirements of the CLRA, the notice program will utilize four 1/4 page ads in the California regional edition of *USA Today*. These ads will feature the Summary Notice and will run for four consecutive weeks." *Id.* ¶ 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|----------|--------------------------|------|---------------|
|          | SA CV16-00283 JAK (JEMx) |      |               |
| Title    | Rachael Cronin v. EOS Products, LLC | | |
|          | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

### 3.   The Individual Notice Plan Does Not Provide Sufficient Notice

Plaintiffs have not shown that the notice plan is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). As noted, individual notice will be sent to only the approximately 3500 individuals who have filed a complaint and appear in the EOS complaint database. Plaintiffs have not shown that this sufficiently includes individual notice "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he import of this language is unmistakable. Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Plaintiffs have provided no explanation for why direct notice is limited to only those Proposed Settlement Class members in the complaint database. There has been no showing that such information is not available through other means. Nor has it been shown that reasonable efforts have been undertaken whose results showed that these are the only Proposed Settlement Class members for whom contact information can be obtained. Plaintiffs have not, for example, stated whether EOS has other customer databases, a customer list or a mailing list of former, present or potential customers who have been, or may be, interested in its products.

Individual notice to an entire customer list is not generally required when it would be "overly broad or over-inclusive." *Yeoman v. Ikea U.S. W., Inc.*, No. 11CV701, 2013 WL 5944245, at *5 (S.D. Cal. Nov. 5, 2013). However, there has been no such showing here. *Compare Yeoman*, 2013 WL 5944245, at *6 ("The list of 1.6 million individuals who gave Ikea their email addresses for a wide variety of purposes bears no reasonable relationship to the group of individuals whose zip codes were requested and recorded in conjunction with a credit card transaction."); *Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214(CM), 2010 WL 5187746, at *7 (S.D.N.Y. Dec.6, 2010) (notice to Best Buy's entire email list would be over-inclusive because "there is no link between customers who have shared their email addresses with Best Buy and customers who were denied a price match."); *with In re "Agent Orange" Product Liab. Litig.*, 818 F.2d 145, 169 (2d Cir.1987) (individual mail notice to all 2.4 million Vietnam Veterans would have been "considerably overbroad" when "far fewer than that number were exposed to Agent Orange").

Plaintiffs have provided no explanation for why direct notice will not be sent to those Proposed Settlement Class members who purchased EOS Lip Balm directly from EOS's website. *See* Dkt. 1 ¶ 38 ("EOS advertises its products on its website and permits users to purchase products on the website."). EOS may retain some customer information from such sales. If so, it may be susceptible to a search of sales of EOS Lip Balm during the class period from January 1, 2009 to the present.

For these reasons, Plaintiffs have not shown that individual notice cannot reasonably be sent to more Proposed Settlement Class members. Because individual notice is mandatory as long as it is reasonable under Fed. R. Civ. P. 23(c)(2)(B), the proposed notice plan is not sufficient. *See Eisen*, 417 U.S. at 173 ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."); *Besinga v. United States*, 923 F.2d 133, 136 (9th Cir. 1991) ("The Advisory Committee's Note to Rule 23 makes clear that notice pursuant to subdivision (c)(2) is 'not merely discretionary.'").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

4.    The Publication Notice Plan Is Not Sufficient

Plaintiffs also have not shown that the internet media notice plan is the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs argue that the primary focus on internet banner advertisements is reasonable because it "mirrors the form of advertising used by EOS to target its customers." Dkt. 39 at 14. Plaintiffs add that such notice has been approved in similar cases. However, in some of them other forms were also used. *See, e.g.*, *Pappas v. Naked Juice Co of Glendora, Inc.*, No. LACV 11-8276 JAK PLAX, 2013 WL 12124090, at *3 (C.D. Cal. Aug. 7, 2013) ("There will also be a print notice program. The Summary Notice will be published in *Parade* and *People* magazines and *USA Today*. The publication in *People* will be nationwide, while the publications in *Parade* and *USA Today* will only appear in publications that are distributed in California, other western states, and certain northeast states. The publications and geographic locations of such advertisements were selected based on a demographic analysis of where likely Class Members reside." (citations omitted)); *In re HP Laser Printer Litig.*, No. SACV 07-0667 AG RNBX, 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31, 2011) (notice plan included "publishing the 'summary notice' in USA Weekend, Parade, People, and CIO Magazine as well as placing banner advertisements on Yahoo.com and other websites.").

Furthermore, EOS also uses traditional forms of advertising, including on television and in print media. There are several references in the Complaint to EOS's print and magazine marketing campaigns. *See, e.g.*, Dkt. 1 ¶ 4 ("The company has achieved meteoric growth through print and online marketing campaigns"), ¶ 12 ("Ms. Cronin had observed EOS advertisements on social media and print magazines prior to purchasing the product."); ¶ 37 ("EOS pursued an aggressive marketing campaign, utilizing product placement as well as celebrity endorsements in magazines, Twitter, Pinterest, and Instagram."), ¶ 42 (referring to Defendant's "celebrity endorsements and magazine advertisements").

That notice in the print media in which EOS advertises is likely to reach Proposed Settlement Class members is confirmed by Weisbrot. He declares that the advertisements will be targeted at websites such as *"Vanity Fair, Vogue, Life & Style Magazine, Marie Claire, Elle* and *Cosmopolitan"* "to ensure messaging is served to the most relevant audience." Supplemental Declaration of Steven Weisbrot, Esq. ("Weisbrot Supp. Decl"), Dkt. 39-1 ¶ 22. These are all websites for magazines that are printed. Thus, the notice plan should include publication notice in some of these magazines, or other print sources in which EOS advertises, in order reasonably to reach these Proposed Settlement Class members.[7]

Further, notice by internet banner advertisements has not been shown to "mirror[]" the form of digital advertising that EOS uses to reach its actual or potential customers. Dkt. 39 at 14. The internet notice plan focuses on internet banner advertisements that will run on certain websites. *See* Weisbrot Supp.

---

[7] The notice plan does include 1/4 page advertisements in the California regional edition of *USA Today*. This is not sufficient to provide reasonable notice to the Proposed Settlement Class members who would benefit from notice in print media. *First*, Weisbrot's declaration makes clear that this form of notice is included in the notice plan not because it is calculated to reach class members, but is "to satisfy the notice requirements of the CLRA." Weisbrot Decl. ¶ 19. *Second*, this settlement applies to a proposed nationwide class. Therefore, publication in the California regional edition of the *USA Today* would not reach certain members who reside outside of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
|  | SA CV16-00283 JAK (JEMx) |  |  |
| Title | Rachael Cronin v. EOS Products, LLC |  |  |
|  | Marylou Gilsleider, et al. v. EOS Products, LLC |  |  |

Decl. ¶ 22 ("The digital media plan will utilize websites such as *Vanity Fair*, *Vogue*, *Life & Style Magazine*, *Marie Claire*, *Elle* and *Cosmopolitan*, amongst others, to display the banner ads."). However, there is no evidence that these are websites on which Defendant advertises as part of its digital marketing campaigns. Indeed, the Complaint alleges that EOS's digital marketing practices focus on celebrity endorsements and advertisements on social media websites, such as Facebook, Instagram, Pinterest and Twitter. *See, e.g.*, Dkt. 1 ¶ 5 (describing "hundreds of celebrity endorsements and sponsored content on social media with hashtags including **"#YUMMY"** and **"EOSOBSESSED"** along with posts treating EOS lip-balm as a travel companion, a cure for health and hygiene problems, and a product that consumers cannot live without."), ¶ 12 ("Ms. Cronin had observed EOS advertisements on social media and print magazines prior to purchasing the product."), ¶ 37 ("EOS pursued an aggressive marketing campaign, utilizing product placement as well as celebrity endorsements in magazines, Twitter, Pinterest, and Instagram."), ¶ 41 ("Examples of EOS viral marketing campaigns include the following social media efforts involving celebrities, which promote the product as healthy, as a cure for celebrity problems, and as a travel companion.").

Plaintiffs have not met their burden to demonstrate that the notice plan is the "best notice that is practicable under the circumstances," in the absence of this form of notice in light of EOS's print marketing campaigns. Fed. R. Civ. P. 23(c)(2)(B).

5.      Disclosure of Medicare Warning on Checks is Insufficient

At the December 19, 2016 hearing on this Motion, counsel were directed to provide more information about "the process and language that will be used with respect to the disclosure to putative class members of issues that could arise should a health insurer assert a claim as to a settlement amount to be paid to a class member who received medical treatment for which an insurer made a payment." Dkt. 35 at 1. In response, the parties have added the following language to the Settlement Agreement:

> Acknowledgement of Insurers' Interests. The Parties make no representations or warranties with respect to any obligations a Settlement Class Member may have to his or her insurer as a result of any payment made to a Settlement Class Member under this Settlement Agreement, or whether such payments constitute reimbursement of medical expenses. Any such obligations shall be the sole responsibility of the Settlement Class Member. The Parties do not intend for this Settlement Agreement to affect an insurer's interest, if any, in any monetary benefits paid pursuant to this Settlement Agreement.

Dkt. 39 at 2.

The parties have also agreed to include this language with any payments issued to Proposed Settlement Class members pursuant to the Settlement Agreement. *Id.*

An insurer may have paid for some or all of the medical costs incurred by a Proposed Settlement Class member that forms the basis for his or her claim in this action. As a result, the insurer may have a right to reimbursement from a class member for amounts received in settlement. The proposed language does not state this potential claim with sufficient clarity so that a Proposed Settlement Class Member can make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-00235 JAK (JEMx) | Date | June 29, 2017 |
|---|---|---|---|
| | SA CV16-00283 JAK (JEMx) | | |
| Title | Rachael Cronin v. EOS Products, LLC | | |
| | Marylou Gilsleider, et al. v. EOS Products, LLC | | |

an informed decision about whether to accept a payment, some or all of which could be claimed by a health insurer.

Furthermore, by opting into the settlement, Proposed Settlement Class members release all claims against EOS, including those for misrepresentation and false advertising. A Proposed Settlement Class member could seek monetary relief for such claims without necessarily incurring potential reimbursement obligations to a health insurer. A Proposed Settlement Class member's decision to release these claims in exchange for a payment for health related harm may very well depend on whether he or she will in fact receive and maintain that payment. This information is also not disclosed.

Finally, disclosures to Proposed Settlement Class members that accompany a payment, come too late. This is not a reasonable process to permit an informed decision as to whether to opt into the settlement. Even if such a notice were read, there is no assurance that, presented with a choice of accepting a payment, or rejecting it in a manner that is not disclosed, a Proposed Settlement Class member could make an informed and reasoned decision.

*          *          *

For the foregoing reasons, Plaintiff has not met its burden to demonstrate that the notice plan will achieve "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

**IV.    Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**.

A Status Conference is set for July 24, 2017 at 1:30 p.m. By July 17, 2017, the parties shall confer and file a joint report stating their respective or collective positions as to whether further efforts will be made to address the issues raised in this Order, or whether a Scheduling Conference should be set to establish deadlines for the pre-trial and trial proceedings.

**IT IS SO ORDERED.**

_____    :    _____

Initials of Preparer    ak